MARIA KAANAANA *vs.* KEAHI (k), MAHOE (w), and KANAKANUI, her husband.

EXCEPTIONS.

HEARING, SEPTEMBER 28, 1893. DECISION, OCTOBER 19, 1893.

JUDD, C.J., BICKERTON AND FREAR, JJ.

The Court refuses to reverse an order of the lower Court, setting aside the verdict and ordering a new trial, on the ground of misconduct of the jury, certain jurors having held conversations with parties defendant showing hostility towards them.

OPINION OF THE COURT, BY BICKERTON, J.

This cause came on for trial at the February Term, 1893, of the Circuit Court of the First Circuit, and resulted in a verdict for the plaintiff for possession of the land claimed, to which the defendants duly excepted as contrary to law and the evidence, and gave notice of a motion for a new trial. A motion for a new trial was filed and argued. A number of grounds were set up, one being the misconduct of the jury,

naming Sam Kalaluhi, Piikoi Okuu, Koloa and Peter Davis particularly. A number of affidavits on both sides were filed. The Court after overruling all the grounds set up, excepting the above mentioned one, says, "During the trial of the case the Court was not satisfied with the action of several of the jurors, but this of itself is not sufficient to grant a new trial; but I am strongly impressed by the affidavits filed, that there was such misconduct on the part of the jury in this case as to cast suspicion upon any verdict that they rendered; and on this ground I sustain the motion and order the verdict set aside and that a new trial be had." To which decision and order the plaintiff duly noted and filed exceptions. And the matter now comes here on a duly allowed bill of exceptions.

Defendants' counsel contends that this Court should consider and pass on all the grounds taken by him in his motion for a new trial, that the verdict was contrary to law and the evidence, etc., that were overruled by the trial Judge. To be entitled to this he should have excepted to these rulings and come here on a bill of exceptions; he prevailed on one ground alone. We see no reason why two bills of exception should not be allowed and argued, one from each side.

A man named Kupaa who is on very friendly terms with plaintiff and family was constantly in attendance during the three days of the trial, and was seen frequently in close conversation with some of the jurors during the recesses of the Court, and when others came near, the conversations would stop at once. This is clear from the affidavits of Mahoe, Kanakanui, Police Officer Nahoolewa and Peter Davis. Peter Davis, one of the jurors, met Mahoe (one of the defendants) in the street during the time the trial was on, and said, "You cannot win the land, the jury are on Kauhi's side (Kauhi was assisting in the plaintiff's case); there is one man giving them food and drink." He also said Mahoe was in the right if the jury "had not been bought;" then Sam Kalaluhi, another juror, came along

with some gin in a bottle and gave it to Davis, then Davis said to Mahoe, " I don't say to you that this bottle came from Kauhi," and, continuing, said to Kanakanui, "You can't win your case." All this appears from the affidavits of Mahoe, Kanakanui and Sam Haluapo. There are affidavits as to remarks made to defendants by some of the jurors, such as, "No use for you to try to make a case of this, you will lose your money for your lawyer and the food for your witnesses," etc.

In the case of *Dana vs. Roberts*, (1 and 2 Root, 134 and 451) the Court says : " The principal guard upon jurors in this state is their oath and their virtue. If they are suffered to enter into conversation with people respecting the causes they have under consideration, the purity of trials by jury, the great barrier of liberty and justice, will be corrupted ; it ought, therefore, to be guarded with the most vigilant attention." This case is cited in Graham & Waterman, New Trials, p. 100.

Then there is the very contradictory statements made by Sam Kalaluhi as to where he got the bottle of gin. The affidavits of Peter Davis, one of the jurors, corroborates all these statements ; he also says that Sam Kalaluhi was working for the plaintiff, "because he tried to influence me;" when the witnesses were testifying he would say, "You can't trust that man ; it is no use to trust that man." This all goes to show that some of these jurors had prejudice and were biased and prejudiced, and showed hostility towards defendants before the trial had closed and the case submitted to them. What Davis said to Mahoe about where the bottle of gin came from, can only be construed one way, that is, he intended Mahoe to understand, that it did come from Kauhi or the plaintiff, perhaps with the object of getting something from the defendants. This certainly was improper conduct on the part of a juror. Jurors when they are separated for the night, while a case is on trial, have no right to discuss the matter either between themselves or with outsiders, and most certainly not with the parties to a suit. We consider

this misconduct on the part of a juror. The affidavits filed by defendants corroborate each other and do not stand alone on any one statement; the circumstances establish the fact that these meetings and conversations did take place as stated.

The counter affidavits filed by the plaintiff are individual denials, but they establish the fact that the Court had instructed the jurors to abstain from conversation with anybody about the case during the recesses.

The affidavit of Sam Kalaluhi also corroborates the statement in regard to Peter Davis' getting a bottle of liquor from him, also to the conversations had with Mr. Magoon, although he denies having said things that the others say he did.

After consideration of all the affidavits, we can only arrive at the conclusion that there was gross misconduct on the part of some of the jurors. It cannot be said that these defendants had what they have a right to, that is, a trial by a fair, impartial and unprejudiced jury.

"Unexplained communications between a juror and the successful party to the suit, his friends, counsel or agents, will lead to such an inference of tampering as will avoid the verdict." Thompson on Trials, Sec. 2559 and cases there cited.

"Corrupt attempt to influence the verdict of a jury by other means than evidence and argument in open court, * * * on grounds of public policy, is always ground for a new trial, without reference to the merits of the case, and whether successful or not. The law is so sensitive upon this subject, that affidavits not explained away, casting suspicion of such misconduct on the prevailing party, will avoid a verdict. The rule is applied with almost equal stringency, whether such attempts proceed from the *prevailing party* himself, from *his friends*, or even from *officious third persons*. It is upon this principle * * * that unexplained communications between the jury and the prevailing party, his counsel or friends, create such a presumption against the integrity of the verdict that it will not be allowed to stand.

\* * \* Affidavits of jurors are always received to show attempts so dangerous to justice."

Ibid, Section 2560 and cases there cited.

" Where the misconduct was of such a nature that prejudice *might* have resulted from it, a presumption of prejudice arises, which, unless rebutted by the successful party, will require the granting of a new trial * * \* the irregularity must have been of such a character that its natural tendency would be to disqualify the jurors for the proper and unbiased discharge of their duties."

Ibid, Section 2617 and cases there cited.

In our opinion, the affidavits in this case disclose such a state of facts that would have a natural tendency to disqualify some of the jurors for the proper and unbiased discharge of their duties. And we do not find that the counter affidavits explain away or rebut these facts.

In the case of *Roberts vs. Jones*, 30 Iowa, 525, the court says : " It has been frequently held by this court that we will not reverse an order of the court below granting a new trial, unless it is made clear * * \* that the discretion of the court below has been abused. A stronger case should be made to justify the interposition of the Appellate Court when a new trial has been granted than when it has been refused." Citing a number of cases in the same State in support of this.

We consider that considerable weight should be given by us (in those cases) to the opinion and decision of the trial Judge who has every facility to observe the actions of parties, witnesses and jurors during the progress of the trial, and the incidents and circumstances surrounding the case.

We therefore sustain the decision of the trial Judge, ordering that the verdict be set aside and that a new trial be had.

Exceptions overruled.

*C. W. Ashford*, for plaintiff.

*J. A. Magoon*, for defendants.