## Elus Rigsby v. The State.

### No. 1466. Decided January 10, 1912.

**1.—Local Option—Agency—Insufficiency of the Evidence.**

Where, upon trial of a violation of the local option law, the evidence showed that the defendant owned no whisky, sold none, and got no benefit or the money from it, but that he bought the whisky for the alleged purchaser, the conviction could not be sustained. Following Givens v. State, 49 Texas Crim. Rep., 267.

**2.—Same—Campaign Speech—Influencing the Jury.**

Where, upon trial of a violation of the local option law, after the jury were empaneled and sworn, the court took a recess of an hour and one-half for the purpose of turning over the courtroom for a prohibition speech, the jury being permitted to go out or remain anywhere they wished during the speaking, but listened to such prohibition speech, and thereafter immediately tried the defendant and convicted him, there was reversible error; although the bill of exceptions is not as full as it might have been, in that it does not state the language used by the speaker, but simply the character thereof.

Appeal from the County Court of Nacogdoches. Tried below before the Hon. F. P. Marshall.

Appeal from a conviction of a violation of the local option law; penalty a fine of $60 and thirty days confinement in the county jail.

The opinion states the case.

*V. E. Middlebrook,* for the appellant.—On the question of permitting the jury to separate and listen to a prohibition speech: Yanez v. State, 6 Texas Crim. App., 429; Caldwell v. State, 12 id., 302; Garcia v. State, id., 335.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted for violating the local option law, his punishment being assessed at a fine of $60 and thirty days imprisonment in the county jail.

The allegation in the information is that appellant sold to Leroy Thomason. Thomason testified that on the 11th of December, 1910, he was in Mr. Coker's livery barn in the town of Nacogdoches, where appellant was working, and asked appellant if he knew where he, appellant, could get him some whisky. Appellant replied in the negative. Thomason gave him seventy-five cents and sent him out to see if he could secure the whisky. Appellant went away and was gone between half hour and an hour and returned and informed Thomason that he had secured some whisky, and handed it to him. Thomason says he did not know where appellant got it. Appellant testified he was working at Mr. Coker's livery barn and is still working there; that Mr. Thomason came to him and asked him if he could get him some whisky; he replied that he did not know whether he could or not. Thomason gave him seventy-five cents and asked

him to get him some whisky if he could; that he complied with Mr. Thomason's request, and was gone about a half or three-quarters of an hour. He says there was present at the time of this conversation a negro named Charlie Williams, who heard what Mr. Thomason said, and when Thomason left Williams told appellant that he would let him have the whisky, and took him down to Mary Price's residence and got a pint of whisky out of a grip under the house, gave it to appellant, who gave him the seventy-five cents, and appellant then took the whisky and gave it to Mr. Thomason. Appellant had no interest in the whisky, did not get any of it, or any of the money Mr. Thomason gave him. He says he recollected about Mr. Adams and Mr. Rich asking him where he got the whisky, and that he did not tell them he got it from Tobe Sparks; that he told them he got it from Charlie Williams. "I went with Mr. Adams and Mr. Rich to hunt the fellow I got the whisky from. We did not find him." He denied telling them that he had gotten it from Tobe Sparks. Mary Price testified no such man as Charlie Williams was at her house and neither was Tobe Sparks. That she did not know Charlie Williams, and if defendant was at her house on the night in question she did not know anything about it. However, she was not at home the early part of that night; she went to a show. Rich testified that he went with Adams to see defendant and ask him who he got the whisky from for Thomason, and he said he got it from Tobe Sparks. "I did not know then that there was two cases against defendant at the time for selling whisky to Leroy Thomason. I do not know that there are two cases against him, and I do not know which defendant was talking about when he said he got the whisky from Tobe Sparks." The evidence shows there were two cases against appellant for selling whisky to Leroy Thomason, one No. 2213 and this case, which is No. 2211. This is the evidence as introduced on the trial.

1. We are of opinion that under the authority of the case of Givens v. State, 49 Texas Crim. Rep., 267, that the evidence does not justify the conviction. Thomason fails to make out a case, at least he in nowise contradicts the testimony of defendant, but as far as he has knowledge of the facts his testimony and that of the defendant coincide and agree. Appellant testifies he owned no whisky, sold no whisky, and got no benefit from it or the money, but that he bought the whisky for Thomason. We are of opinion that this evidence has not been met or overcome by the State's evidence.

2. There is another question in the case of some importance which is presented by bill of exceptions. The bill recites that the case was called for trial about 11:30 in the morning, the jurors were questioned both by the State's attorney and defendant's counsel, and both parties made their peremptory challenges, and court adjourned until 1:15 p. m. When court convened at that hour the jury was sworn, and after they were impaneled took recess for an hour and a half

so that Senator O. S. Lattimore could occupy the courthouse to deliver an address to the people in favor of State-wide prohibition in the then pending election. The jury remained in the box and heard the entire prohibition speech "in which much forcible oratory and invective with regard to the violation of the local option law, and prohibition laws, and the prohibition question in general, was delivered in the presence and hearing of the jury, and upon the reconvening of the court, after the prohibition orator had delivered himself of his speech, and after the court had passed upon defendant's motion to quash the complaint and information, and the same had been overruled by the court, the defendant's counsel then presented to the court the following motion to quash the jury empaneled to try this case, to wit:

" 'State of Texas
          v.                    No. 2211.
     Elus Rigsby.
 " 'Comes now the defendant and moves the court to set aside and dismiss the jury now in the jury box, which said jury have not been sworn to try the case, and have a new jury summoned to try this case; because for the last hour and a half the said jurors have been listening to an impassioned prohibition argument in which violations of the local option laws have been discussed; and such being the case, the defendant's rights would be prejudiced to go to trial before this jury. This motion is made before the defendant pleads to the charges. The court overruled the motion.' "

 The exceptions are thus stated: "Because the proceedings of the court, stopping the trial of the case and turning the courthouse and the jury over to a prohibition speaker, and permitting the jury to sit in the jury box in a body and listen to one and one-half hours' impassionate argument on the prohibition question in the phrases, clauses, sentences, figures, illustrations and arguments that are generally used and which were used by the speaker upon this occasion, was really calculated to, and likely did prejudice the rights of the defendant before the jury in this case, and tenders his bill of exceptions No. 2." The court approves this bill with the qualification "that the jury had been selected in this case by the noon hour, were sworn to try the case after convening at 1:15 p. m., when the court took a recess of one and one-half hours for the purpose of turning over the courtroom to Senator Lattimore for prohibition speech, the jury being permitted to go out or remain anywhere they wished during the speaking, some of the jury vacated the jury box, they not being required to sit in the jury box, or remain together during the speech. The court does not believe that the speaker was inflammatory, nor said anything whatever that prejudiced the rights of the defendant before said jury. The defendant's attorney did not question any juror nor ask any question of any juror in said case after the speak-

ing as to whether or not any juror had heard anything during said speech that would or might probably influence his action as a juror in the case. This was not done at any time, although the jurors served for the remainder of that week up to Friday afternoon, as soon as the speaking was over, court reconvened, the information was pretended, defendant's motion to dismiss the jury was presented and overruled."

"This is the bill of exceptions as found in the record. The bill is not as full as it might have been, in that it does not state the language used by the speaker, but only states in a general way the character of language and matters of argument. The court qualifies this bill with reference to that phase of it by stating that he did not regard the speech as inflammatory or prejudicial to the rights of the defendant. That, of course, would be a matter of conclusion on the part of the judge. The fact remains, which is stated by the court in the qualification that the speech of an hour and a half was made in regard to prohibition election then pending. This trial occurred on the 17th of July, 1911. It is a matter of history and judicial knowledge to this court that the election occurred on the 22d of July, 1911. The question then is, whether or not as presented this was a matter of sufficient importance to require a reversal of the judgment. We are of opinion that it is. It is undeniable that the jury sat in the courtroom, and the statement of appellant that they sat in the jury box does not seem to be controverted, and heard a speech in favor of prohibition for an hour and a half. Appellant was being tried for the violation of the local option law at the time. Immediately upon cessation of the speech the jury in the case proceeded to trial, the jury having already been impaneled. Under these circumstances we are of opinion appellant's motion to set aside the jury should have been sustained, and that he sustained injury in being forced to trial under the circumstances before a jury who had just been listening to a heated campaign speech. We understand the rule to be this: When a jury has been exposed to improper influences which may have affected their verdict, the presumption of law is against the purity of the verdict. This seems to be a well settled rule. See Woods v. State, 43 Miss., 364; Pope v. State, 36 Miss., 121; Riggs v. State, 26 Miss., 51; Edney v. Baum, 44 Neb., 294; Darter v. State, 39 Texas Crim. Rep., 40; Shaw v. State, 83 Ga., 92; People v. Constantino, 153 N. Y., 24. It is not the purpose of this decision to discuss that question further.

The next question, were the circumstances set out in the bill of exceptions sufficient to show that appellant was probably injured. We think this must be answered in the affirmative. This question was discussed in Shaw v. State, 83 Ga., 92. In that case it is shown that during the trial the jury was carried to church at night where prayer-meeting was being held, conducted by the pastor, who was the prosecutor in the case. That upon their arrival there the pastor

politely assigned the jury to seats in the church separate and apart from the congregation, and that he addressed the' jury. The record further shows that upon the termination of the exercises the jury left and mixed with the crowd, some of the congregation going out before and some after the jury. The State met this with evidence to the effect that while they did attend the meeting, they were given seats wholly apart from the congregation, and no reference was at any time made to any law case whatever; that they left the church in a body, and in charge of the bailiff, without mixing with the crowd, and without any person having any opportunity to have a conversation with them, either while they were at the church or when they were leaving it; and that the prayer to which reference was made in the seventh ground of the motion made no further reference to the court and jury in said case, than to ask "that the blessings of God might rest upon our government with its officers, and that God would bless the officers of the court then in session, that they might be guided aright in the discharge of their duties."

The bailiff also in charge of the jury made an affidavit to the effect that nothing was said about the prisoner in their presence, and that he was careful to guard them, and not thinking it was improper, had gone with them to the prayer-meeting; that on their way to and from the church they did not separate, nor was anything said to them, or in their presence, about the case; that at the church they were seated apart from the congregation; and that the usual services were held, and nothing was said about the case. The court says "where misconduct of a juror or of the jury is shown, that the presumption is that the defendant has been injured, and the onus is upon the State to remove this presumption by proper proof. When the trial judge has decided, as in this case, that the State has removed that presumption and has shown that the defendant was not injured by the misconduct of the jury, reviewing courts are loath to interfere with his finding upon that subject. This court, however, has in several cases reviewed and reversed the decision of the trial judge upon this subject, notably in the case of Obear v. Gray, 68 Ga., 182." The decision in the Shaw case, supra, deals with this matter at length, and reviews the question, reaching the conclusion that there was such injury as required a reversal of the judgment, and they did reverse it. It will be noted in the case in hand that no juror or anyone undertook to testify that the jury was not impressed unfavorably to defendant, and the whole matter was left upon the bill of exceptions as presented to the court, and as reviewed in the light of the motion for new trial as well as the action taken at the time the bill was reserved. In the Shaw case the jurors filed their affidavits to the effect that the matters occurring at the church did not affect their minds, nor influence them, but the court uses this language: "But how can they tell—how can any man tell what particular facts and circumstances influence his judgment? Woolfolk

v. State, 81 Ga., 551; Smith v. Lovejoy, 62 Ga., 372; Thompson on Trials, 962." And the court in the Shaw case concludes that part of the opinion as follows: "After mature consideration of all these facts, we think the misconduct of this bailiff and jury was so gross that the public policy of the State requires a new trial for the defendant. It was such a gross violation of all order, decorum and decency in the trial of a case of life and death, that the verdict should be set aside, whether the defendant was injured or not. We have carefully examined the text books and reports, and we can find no case of such gross misconduct as the facts show this conduct of the jury to be. Numerous cases are cited where the verdict was set aside for conduct much less gross than this."

It is true, in the Shaw case it was a homicide trial, while here it is but a local option conviction, still it may be stated as a fact, without discussing any rule of propriety, that heated contests in local option matters and prohibitions questions are very exciting, and has a tendency and does it seems disturb very much the usual calm demeanor and judgment of our people. The last campaign in Texas during the month of July, culminating in the election on the 22d, is no exception to the statement, and in fact we may take judicial cognizance of the fact that our people were very much wrought up over it and became perhaps unduly excited. Under these circumstances, and five days before the election, the speech complained of as being heard by the jury was delivered in the courtroom in the presence of the jury, and after they were impaneled to try defendant for violating the local option law. This ought not to have occurred. If the court had adjourned and permitted Mr. Lattimore to occupy the courtroom for an hour and a half, making a speech on his side of the question, the jury should have been retired or kept away during that speech, but this was not done. Just what the injury was to appellant in this case is not shown, but it is shown that the jury heard the speech and immediately heard the testimony and argument on the trial of this case. Suppose Mr. Lattimore had been permitted to make the hour and a half speech to the jury independent of the remainder of the assembled audience, after they had been impaneled in the case. Would any candid mind say that such was permissible, or that the speech was not seriously calculated to impress the minds of the jury? Suppose they had been segregated in the courtroom and turned over to the speaker for an hour and a half with a speech upon the exciting question of amending the Constitution so as to bring about State-wide prohibition, would it be seriously contended that this was not such conduct as would have required a reversal of the judgment? Suppose after the case had been submitted to the jury, they had been permitted to sit in the courtroom either as part of the audience or by themselves, and had the speaker to address them on the pending issue of prohibition? Could this be maintained as a proper course of conduct before an impaneled jury to try a local

option case? Suppose that the jury had retired to consider their verdict, and the speaker had been permitted to make his address to them in regard to the pending election, and suppose further the assembled crowd had been brought in about the time he began that speech to the jury? Would it be contended for a moment that this was proper conduct, or that it would have failed to make such an impression on the jury as would have required that they should not be permitted to sit in the case? We think not. For a discussion of this matter, see Shaw v. State, supra. We are of opinion that a verdict obtained under such circumstances, and before such a jury ought not to be permitted to stand.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*