# MABEL CHANG KEALOHA AND JACQUELYN ARRUDA, A MINOR, BY HER SUBSTITUTED NEXT FRIEND AND GUARDIAN AD LITEM, DONALD ARRUDA *v.* RAYMOND M. TANAKA.

## No. 4075.

MARCH 29, 1962.

CASSIDY, WIRTZ, LEWIS, MIZUHA, JJ., AND CIRCUIT JUDGE TASHIRO, IN PLACE OF TSUKIYAMA, C. J., DISQUALIFIED.

458

This is an action in negligence instituted by plaintiffs-appellants against defendant-appellee for damages resulting from the wrongful death of one Homer Russell Barber, in a collision of a motorcycle operated by said Homer Russell Barber and an automobile operated by the defendant, Raymond Tanaka, on September 28, 1956. Plaintiff Jacquelyn Arruda is the orphan daughter and plaintiff Mabel Chang Kealoha the surviving mother of the deceased, Homer Russell Barber.

After a lengthy trial, the circuit court pursuant to a verdict of the jury, entered judgment in favor of defendant and against plaintiffs on January 10, 1958. Plaintiffs moved for judgment notwithstanding the verdict and at the same time moved for a new trial. These motions were denied and a notice of appeal to this court was filed by plaintiffs on January 30, 1958.

On May 23, 1958, plaintiffs moved for a new trial in the circuit court on the ground of "newly discovered evidence of misconduct of the jury and the court." The circuit court entertained the motion and at the conclusion of the hearing indicated that it was disposed to grant a new trial. Plaintiffs then moved in this court to have the action remanded to the circuit court.

On July 17, 1958, the opinion of this court on the motion to remand this action was filed in *Kealoha* v. *Tanaka,* 42 Haw. 630. The circuit court on July 28, 1958, without a hearing entered an order granting a new trial. On the same day, the tenure of the circuit court judge ended by reason of the appointment and qualification of a new judge. Defendant moved to vacate this order. The

motion was denied by the new judge, and defendant moved for and was allowed an interlocutory appeal by the circuit court from the order granting a new trial.

On January 21, 1960, this court in *Kealoha* v. *Tanaka*, 44 Haw. 57, 351 P.2d 1096, reversed the order of the circuit court granting a new trial on the ground that defendant was not accorded a hearing after the original remand and before the entry of the order granting a new trial. The case was remanded to the circuit court for hearing on the motion for a new trial.

At the hearing before the circuit court, the evidence adduced in June 1958, was considered by stipulation of counsel. The only other evidence was on the diligence of counsel, a point on which the finding was in favor of the plaintiffs. On April 21, 1960, the circuit court entered an order denying a new trial. This appeal was then re-instated as authorized by this court in *Kealoha* v. *Tanaka*, 42 Haw. 630, 639.

Plaintiffs contend in their first specification of error that the lower court erred in submitting to the jury the issue of contributory negligence when there was no evidence of negligence of the decedent, Homer Russell Barber. A careful review of the record indicates that there was sufficient evidence to warrant charging the jury on the issue of contributory negligence. The collision occurred when the defendant made a left turn in front of the oncoming decedent.

Defendant testified that on September 28, 1956, having finished his day's work, he drank three cans of Schlitz beer between 5:30 and 6:30 P.M. at the construction yard of J. M. Tanaka Construction Company, and proceeded to drive his automobile toward his home. As he approached the intersection of Kapiolani and Kaimuki Avenues, he turned on his blinker lights and made his hand signal, both indicating an intention to make a left turn. At this

point, he was in the number two lane from the mauka (north) curbing of Kapiolani Boulevard, the "left hand lane" for traffic traveling in the Ewa (westerly) direction, where he stopped for about five seconds, waiting for five cars to go by. After the cars had passed, he looked, and not seeing any vehicles approaching from the Ewa direction, commenced to make his left turn into Kaimuki Avenue. As he passed the first lane from the center and entered the second or middle lane, there being three lanes of on-coming traffic, he looked to his right and saw a motorcycle coming toward him. He tried to avoid a collision by accelerating his vehicle, but was struck anyway. He stated that he was going between ten and fifteen miles an hour at the time of impact. The motorcycle was about eighty-seven feet away when he first noticed it. He saw the motorcycle in the motion of skidding in applying its brakes, but did not see the motorcycle come in contact with his car.

At the scene of the accident defendant stated to Sergeant Huch of the Honolulu Police Department, that the speed of the motorcycle was between thirty and thirty-five miles an hour. After the accident a single tire skid mark was noticed on the road by Officer Lee. It was approximately one hundred feet long but ending seventeen feet short of the point of impact. The statutory speed limit was thirty-five miles per hour. The decedent struck the defendant's vehicle with enough force to cause extensive damage to the side thereof.

From the foregoing the jury could adduce that the decedent was guilty of contributory negligence in at least two particulars. First, that the decedent had as ample an opportunity to see the defendant as the defendant to see the decedent and hence that it was negligent of the decedent not to keep such a lookout as to be able to avoid the accident.

Secondly, the jury could have believed, from the fact that the decedent laid down a one hundred-foot skid mark, which stopped ten to seventeen feet short of the impact point and still struck the defendant's car with sufficient force to cause extensive damage to the side thereof, that he was going at an excessive rate of speed, and that, to that extent decedent was negligent.

This conclusion follows from the testimony of the expert witness called by the plaintiffs that a motorcycle of the type which the decedent had, traveling at thirty-five miles per hour, would lay down a one hundred to one hundred fifteen-foot skid mark. Here he laid down a one hundred-foot skid mark, traveled another ten to seventeen feet and then struck the defendant's vehicle with great force, indicating a speed considerably in excess of thirty-five miles per hour.

In this case Plaintiffs' Instruction No. 7 read in part:

"In accordance and under the provisions of the above statute, you are instructed that if you find that the Defendant was negligent and that the deceased was not contributorily negligent and that such negligence of the Defendant was the proximate cause of the death of HOMER RUSSELL BARBER, and that the Plaintiff, MABEL CHANG KEALOHA, was partly dependent upon the deceased at the time of his death, you will assess the damages due the mother, * * * ."

Further on in Plaintiffs' Instruction No. 7, the same language appears with respect to the claim of the other plaintiff, Jacquelyn Arruda.

Thus it is clear that the issue of contributory negligence was submitted to the jury by Plaintiffs' Instruction No. 7. It was also included in and submitted to the jury by Defendant's Instruction No. 6, which was given by

agreement.[1] It is still the law in this jurisdiction that invited error cannot be complained of and this applies to jury instructions with full force and effect. *Glover* v. *Fong,* 42 Haw. 560.

Plaintiffs' Specifications of Error Nos. 2 and 3 read as follows:

"2. The court erred in giving to the jury, over objection, appellee's verdict directing instruction No. 5[2] which erroneously omitted the element of proximate cause and placed the burden of proof of freedom from contributory negligence upon appellant.

"3. The court erred in denying appellants' Motion for a New Trial and Motion for Judgment notwithstanding the verdict filed November 19, 1957 raising the same errors of law as specifications of error (1) and (2) herein."

Plaintiffs' Specifications of Error Nos. 2 and 3 do not properly present any matter for consideration and disposition by this court for the reason that they violate

[1]Defendant's Instruction No. 6:

"The burden of proof in this case is upon the plaintiffs to prove and establish their claim and cause of action by a preponderance of the evidence.

"By a 'preponderance of evidence' is meant that which in your opinion has a greater weight.

"It does not mean that one side must produce a greater number of witnesses than the other side; nor that the plaintiffs must prove their case to a degree of mathematical certainty.

"It simply means that the evidence which one party produces in favor of a fact which is denied by his opponent is more satisfactory than the evidence produced by his opponent.

"And on all issues herein except that of contributory negligence, the burden of proof is on the plaintiffs. On the issue of contributory negligence, the burden of proof is on the defendant."

[2]Defendant's Instruction No. 5 read:

"Before you can consider the question of damages, if any, to which the plaintiffs or either of them may be entitled, you must first find the following:

(1) That the defendant was negligent;

(2) That the death of Homer Barber was proximately caused by that negligence; and

(3) That Homer Barber was free of any negligence contributing to his death.

Unless all three of the above facts are found by you, it is your duty to return a verdict for the defendant."

rule 3(b)(4) of the rules of this court, which requires that, "When the error alleged is the charge of the court, the specification shall set out the part referred to *totidem verbis,* whether it be in instructions given or in instructions refused, together with the objections urged at the trial." *You Goo Ho* v. *Dr. Edmund T. K. Ing,* 43 Haw. 330, 332; *Territory* v. *Josiah,* 42 Haw. 367, 407-08.

Nevertheless, this court has carefully examined the instruction as given to the jury and find the case relied upon by the plaintiffs, *Borowsky* v. *Honolulu Rapid Transit Co.,* 29 Haw. 188, inapplicable to this case. In that case, the trial court had given two mutually irreconcilable instructions; one requested by the plaintiff and the other by the defendant. This court there stated that, "* * * the giving of a bad instruction cannot be cured by the later giving of a proper one, for where conflicting instructions have been given the jury is likely to be misled, and the court cannot say which of the two instructions was followed." *Borowsky* v. *Honolulu Rapid Transit Co., supra* at 199. But here, there is no irreconcilable conflict between Defendant's Instruction No. 5 and other instructions given by the lower court. This instruction considered in connection with the court's charge in its entirety to the jury, could not have misled the jury.

In the instant case, Plaintiffs' Instruction No. 1[3] defined negligence; Defendant's Instruction No. 3, as modified,[4] set forth the law on contributory negligence;

[3]Plaintiffs' Instruction No. 1:

"I instruct you that negligence is the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or doing what such a person, under the existing circumstances, would not have done. In other words, negligence is the failure to observe, for the protection or safety of the interest of oneself or another person, that degree of care and precaution which the circumstances justly demand, and what is due care, must be determined according to the facts and circumstances of the particular case."

[4]Defendant's Instruction No. 3:

"You are instructed, Ladies and Gentlemen of the Jury, that the plaintiffs in this case claim through Homer Barber, deceased. They are, therefore, bound by contributory negligence as defined in these instruc-

Defendant's Instruction No. 6[5] clearly stated that on the issue of contributory negligence, the burden of proof was on the defendant; and Defendant's Instruction No. 7[6] defined proximate cause. This court has previously stated that, "* * * instructions of the court must be read together as one connected whole, to ascertain whether they correctly declare the law. The omissions or inaccuracies of one instruction may be cured by the contents of the other instructions, or some of them, and if, when the instructions of the court are considered as a whole, they correctly state the law and are not inconsistent or misleading, the fact that a particular instruction or isolated paragraph may be objectionable, as inaccurate or misleading, will not constitute ground for reversal." *Ginoza* v. *Takai Elec. Co.*, 40 Haw. 691, 711-12; *Ciacci* v. *Woolley*, 33 Haw. 247, 262. See also *Ellis* v. *Mutual Tel. Co.*, 29 Haw. 604, 613-14. Though it is contended an instruction is ambiguous or misleading and susceptible of a different construction, the mere noting of an objection unaccompanied by a specific and detailed request for a further or amended instruction does not properly preserve the issue for review. *Territory* v. *Furomori*, 20 Haw. 344, 350. See also *Ginoza* v. *Takai Elec. Co., supra* at 710.

Further, it must be noted that Plaintiffs' Instruction No. 7 and Defendant's Instruction Nos. 10 and 11, all

tions on the part of Homer Barber. In the light of these instructions, if you find by a preponderance of the evidence that Homer Barber was guilty of negligence, and that that negligence proximately contributed to his death, it will be your duty to return a verdict in favor of the defendant."

[5]Defendant's Instruction No. 6:
"* * * * * * * * * * * *
"And on all issues herein except that of contributory negligence, the burden of proof is on the plaintiffs. On the issue of contributory negligence, the burden of proof is on the defendant."

[6]Defendant's Instruction No. 7:
"I instruct you that in the pleadings of this case, and in the instructions, the words 'proximate cause' have been used, and you are entitled to know how this phrase is understood in law.
"The 'proximate cause' of an injury is that cause which in natural

given by agreement, either as originally submitted or modified, also contain language requiring the jury to pass upon whether the defendant was contributorily negligent without spelling out in those particular instructions the definition of proximate cause. Thus the error, if there was any, was an invited one.

Plaintiffs assigned as Specification of Error No. 4 that "The court erred in sustaining defendant's objection to the introduction in evidence of the legally admissible portions of the deposition[7] of the Deponent Danny Camacho [an eye-witness] after proof to the court before the plaintiffs rested their case, that his attendance as a witness could not be procured by subpoena."

A careful examination of the record shows that the witness, Daniel Camacho, was within the jurisdiction of the court and able to attend the hearing and that he had been served with a subpoena. Upon his failure to appear at the trial, the court had offered to issue a bench warrant to compel his appearance at the trial and make it returnable forthwith. This all occurred before plaintiffs rested their case in chief. The plaintiffs did not choose to follow

and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred."

[7]Rule 26(d), H.R.C.P., provides in part:

"At the trial or upon the hearing of a motion for an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had due notice thereof, in accordance with any one of the following provisions:

"\* \* \* \* \* \* \* \* \* \* \* \* \*

"(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: 1, that the witness is dead; or 2, that the witness is out of the Territory, unless it appears that absence of the witness was procured by the party offering the deposition; or 3, that the witness is unable to attend or testify because of age, sickness, infirmity, or imprisonment; or 4, that the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or 5, upon application and notice that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used."

up on this offer of the court, and their position with reference to this witness is reflected in the following colloquy between plaintiffs' counsel and the court:

"THE COURT: He is in contempt now if he has been served.

"MR. KENNETH YOUNG: I am sure the Court and counsel can appreciate the very embarrassing position I have been put in with reference to my own witness, in forcing his girl friends to come down here, and for the time being, of course, he is very hostile now towards me.

"THE COURT: You will have an opportunity to discuss the matter with him.

"MR. KENNETH YOUNG: I don't want to talk to him any more. I have had it, so far as I am concerned."

The plaintiffs' only reason for favoring the use of the witness' deposition over his personal appearance seems, by the record, to have been the probable hostility of the witness caused by the inconvenience and anxieties arising from the facts leading up to the location of his whereabouts. However, probable hostility of a witness does not in itself warrant the use of a deposition as a substitute for his oral testimony. *Klepal* v. *Pennsylvania R.R.*, 229 F.2d 610 (2d Cir. 1956). The deposition was properly excluded by the lower court.

The last specification of error assigned by plaintiffs was that the court erred in denying plaintiffs' motion for a new trial based on the misconduct of the jury in drinking intoxicating liquor and separating during deliberation.

After the remand from this court pursuant to the opinion filed in *Kealoha* v. *Tanaka*, 44 Haw. 57, 351 P.2d 1096, a hearing was held following which the lower court entered its decision and order holding that the conduct of the jury complained of was not, as a matter of law,

prejudicial to the plaintiffs and that the evidence showed no prejudice as a matter of fact. Except for evidence on the question of diligence of counsel in seeking relief, no new evidence was introduced, the case being submitted on the record previously made.

As stated in *Kealoha* v. *Tanaka,* 42 Haw. 630, 631-32, at the hearing on the motion for a new trial on the ground of newly discovered evidence of misconduct of the jury and the court, the plaintiffs adduced evidence showing that "after the case was submitted to the jury and the jury deliberated for about one hour and thirty minutes, the jury proceeded to Halekulani Hotel for dinner, pursuant to an arrangement made by the bailiff upon consultation with the court; that the court gave no instruction to the jury concerning its conduct during dinnertime; that neither counsel was present in the courthouse when the jury left for dinner; that the jury went to the hotel in three groups on private automobiles; that the bailiff accompanied one group; that a court clerk, who had not taken a bailiff's oath, accompanied another group; that no court officer accompanied the third group; that upon reaching the hotel, the jurors watched an outdoor entertainment for about thirty minutes before going to the dining room; that while the jurors were watching the entertainment, the bailiff went to the outdoor bar to instruct a waitress to take orders for 'drinks'; that the bailiff saw every juror holding a glass after the waitress took the orders; that the bill for the drinks served before the dinner was paid by the court fiscal officer together with the bill for dinner; that at the dinner table some jurors ordered alcoholic drinks at their own expense; that about two hours elapsed between the time that the jury left the courthouse for dinner and returned thereto after the dinner; and that the jury reached its verdict within about thirty minutes after returning to the courthouse."

468

It must be noted that the opinion of this court attending the first remand, *Kealoha* v. *Tanaka,* 42 Haw. 630, 638, clearly set out the questions to be decided on remand, and which were reiterated at the second remand, *Kealoha* v. *Tanaka,* 44 Haw. 57, 57-8, 351 P.2d 1096. The court said on the first occasion:

"We, therefore, direct the circuit court to grant a new trial only if it is satisfied that:

(a) * * *

(b) the separation of the jury during deliberation constitutes prejudicial conduct as a matter of law; or

(c) if such separation does not constitute prejudicial conduct as a matter of law, there has been actual prejudice by such conduct; or

(d) the consumption of liquor by some of the jurors during deliberation constitutes prejudicial conduct as a matter of law; or

(e) if such consumption of liquor does not constitute prejudicial conduct as a matter of law, there has been actual prejudice by such conduct." *Kealoha* v. *Tanaka,* 42 Haw. 630, 638-39.

Inasmuch as new evidence was not introduced in the lower court, the case being submitted on the record previously before this court in *Kealoha* v. *Tanaka,* 42 Haw. 630, we reaffirm the previous opinion of this court which stated that the record "does not contain any evidence that the plaintiffs were actually prejudiced by such separation or consumption of liquor." *Kealoha* v. *Tanaka,* 42 Haw. 630, 636. Thus, the questions presently before this court are narrowed down to questions (b) and (d).

R.L.H. 1955, § 231-16, provides:

"It shall not be necessary in any case, whether civil or criminal, for any trial jury after having been finally

accepted and sworn to try the cause, to be segregated, locked up or otherwise confined at any time prior to retiring to deliberate upon their verdict; provided, however, that the court may in its discretion order and direct that the trial jury in any case, whether civil or criminal, shall be segregated, locked up or otherwise confined after being finally accepted and sworn to try the cause and until the verdict is arrived at or the jury discharged."

This section is silent on the question of segregation during the deliberation of the jury. There is nothing in the section which requires segregation of the jurors in civil cases after submission of the case.

With reference to question (b), the modern weight of authority holds that the unauthorized separation of the jury, in the absence of prejudice, is not *per se* and as a matter of law, ground for a new trial. 39 Am. Jur., *New Trial,* § 89; 66 C.J.S., *New Trial,* § 57; 103 Am. St. Rep. 155, 156-57.

Literal application of any requirement that jurors constantly remain together is impossible now that women are permitted to sit upon juries in this State. All that is shown in the record here as to the separation of the jury is that they proceeded to and from dinner in three automobiles. Differences between jurors riding in three automobiles and sleeping overnight in separate rooms at a hotel after being ordered locked up for the evening are clearly without legal distinction. There is no evidence that the separation of the jury was unauthorized. The trial judge instructed the bailiff to take the jury to dinner and presumably he knew that there was no vehicle available large enough to accommodate the entire jury. The modern rule is announced in 39 Am. Jur., *New Trial,* § 89 at 103, as follows:

"Moreover, in the absence of prejudice shown, the

unauthorized separation of the jury in a civil case after the submission of the cause to the jury is not a ground for setting aside the verdict and granting a new trial. *Such conduct does not, as a matter of law, invalidate the verdict,* but is simply a circumstance which, with other circumstances, ought to be taken into account by the court in determining whether or not a new trial should be granted." (Emphasis added.) Emphasis is directed to the prejudice that may arise from unauthorized separations, and the best reasoned cases have held that "* * * there must be some evidence of other misconduct, in addition to the mere fact of separation, which has operated to the party's prejudice." 43 Am. Dec. 65, 77, quoted in *McDowd* v. *Pig'n Whistle Corp.,* 26 Cal. 2d 696, 699-700, 160 P.2d 797, 799; *Saltzman* v. *Sunset Tel. & Tel. Co.,* 125 Cal. 501, 508, 58 Pac. 169, 171.

With reference to question (d), the record contains evidence that some of the jurors did have a drink or two during the dinner hour. This court has already adopted the modern view in *Territory* v. *Ferris,* 15 Haw. 139, 149:

"The material inquiry in such cases is whether the defendant was prejudiced thereby, in other words, whether the use was such as to affect the mind of any of the jurors and thus deprive the defendant of the benefit of the condition of mind of each and all of the jurors to which he is entitled; and if it appears that the defendant was not prejudiced, the verdict can not be reversed."

We see no good cause to reverse or modify this rule, and would affirm it.

This court in the *Ferris* case, *supra,* cited interchangeably cases where the drinking occurred before and after the submission to the jury and it is evident that no significance was attributed to when the drinking occurred. One of the cases cited in support of this court's ruling in the

*Ferris* case, *supra,* is *State* v. *Washburn,* 91 Mo. 571, 4 S.W. 274. In that case, while the jury was deliberating, two jurors asked to go to the rest room. These jurors were accompanied by the deputy sheriff at the direction of the court. Before they returned to the jury room the deputy bought beer for one juror and a cigar for the other. The court denied the motion for a new trial stating that it would not set aside the verdict in the absence of a showing of intoxication on the part of the juror.

In *Burgess* v. *Territory,* 8 Mont. 57, 19 Pac. 558, 1 L.R.A. 808, a motion for a new trial was denied. The court observed that drinking of liquor is not enough of itself for a new trial where it appears that the quantity consumed was small and that no intoxication or unfitness resulted therefrom. See *Kee* v. *State,* 28 Ark. 155 and *McLendon* v. *State,* 66 Ark. 646, 51 S.W. 1062.

As observed in *Jones* v. *People,* 6 Colo. 452, 461-62, a case cited by this court in *Territory* v. *Ferris, supra*:

"It must be borne in mind that the question we are to deal with has nothing to do with the moral or social questions involved in the use of intoxicating liquors. If a verdict is to be set aside for misconduct of the jury, it must be for legal reasons alone. If by such misconduct a party litigant, or, in a criminal case, a party on trial, has been prejudiced, the verdict should be set aside, for the law requires a fair and impartial verdict. If the justness, soundness or fairness of the verdict has been impaired, or in any way vitiated, by the use of liquors by the jury, such verdict should be set aside. But if no such consequences be shown, or are fairly inferable, if no juror was intoxicated, or in any manner or degree affected in his deliberations or judgment, for what reason in such case is the verdict to be set aside? How has the party on trial in such case been prejudiced or injured by the conduct or mis-

conduct of the jury? The real question in the case is, has the party to be affected by the verdict been prejudiced by the conduct or misconduct of the jury?"

In answer to the argument that the only safety lies in the rigid rule of setting aside the verdict in every case where intoxicating liquors are used by the jury, regardless of whether the jury were affected by such use or not, the Colorado court further stated:

"Would such a rule prevent a repetition of like misconduct by future juries? We say, no. And instead of safety, there is manifest danger in the rule, for it would hold out an obvious temptation, and furnish an almost certain opportunity to secure a new trial in every case, by the surreptitious introduction of liquor into a jury room * * *." *Jones* v. *People, supra* at 462-63. *Accord, Dolan* v. *State,* 40 Ark. 454, 475.

The plaintiffs urge that since the issue of defendant's negligence rested in part on his drinking shortly before the fatal accident, the partaking of the drinks furnished by the court's bailiff tended to minimize that aspect of the issue, and any comment by the trial judge to minimize or magnify this issue would have been reversible error. The evidence on record sufficiently and fairly raises the issue of contributory negligence together with the issue of defendant's negligence for the jury. The jury, in their duty of weighing the evidence, had more than one avenue by which to arrive at their verdict.

It appears from the record that half of the jurors had declined to partake of any drinks during the dinner meal. The testimony of both the bailiff and the court clerk clearly contradicted even a presumption that the judgment of the jury had been affected by the use of liquor. They testified that among those that did partake, none appeared at any time to have been affected in any way thereby, either in demeanor or in apparent resolution.

Under such circumstances, we cannot say that prejudice was sufficiently shown or its probability adequately established to constitute reversible error and warrant the granting of a new trial. This is the same conclusion previously arrived at by this court on the same record in *Kealoha* v. *Tanaka*, 42 Haw. 630, 636.

The consumption of intoxicating liquor by any member of the jury, once segregated, was improper and constituted error. This error was aggravated by the trial judge's[8] instructions to the bailiff, although, as we have seen, it was not prejudicial in this case. "The trial court should not permit such practice and should be assiduous in preventing it." *Kealoha* v. *Tanaka*, 42 Haw. 630, 639. It is incumbent upon the trial court to ascertain, before a jury is placed in the custody of the bailiff, that the bailiff fully understands that the drinking of intoxicating liquor is prohibited so long as the jury remains in his custody, except for medicinal purposes by prescription.

As stated in *Territory* v. *Ferris, supra* at 149, while the use of intoxicating liquor during a trial "* * * is deserving of severe censure and condemnation, such use is not of itself, where the liquor is not furnished by one of the parties to the cause, necessarily a ground for the granting of a new trial."

We hold that separation of the jury or the consumption of liquor by the jurors during the dinner hour in the

---

[8]Excerpt from the testimony of the bailiff at the hearing for a new trial:

(Questions by plaintiffs' counsel.)

"Q Now, what exactly were [the trial judge's] instructions to you before you left the courthouse on the drinking problem?

"A That they may have one drink.

"Q How did he say that to you? You discussed going to the Halekulani Hotel, and then how did this subject of drinking come up?

"A Offhand I don't know the exact words but the way he said, the usual cocktail, if they are used to having one before dinner.

"Q To let them have one?

"A Yes."

modest amounts shown by the record does not constitute prejudice as a matter of law.

Affirmed.

*Kenneth E. Young* for plaintiffs-appellants.

*Ralph T. Yamaguchi* and *Robertson, Castle & Anthony* (*Frank D. Padgett*) for defendant-appellee.

DISSENTING OPINION OF LEWIS, J.,
WITH WHOM CASSIDY, J., JOINS.

Defendant testified he had had three cans of beer after work, and shortly thereafter, while he was on his way home, the accident occurred. The principal question in the case was whether the defendant exercised due care in making a left turn into Kaimuki Avenue when he did.

With respect to contributory negligence, the evidence consisted in (1) the testimony of William DeBolt that he was traveling at 30 miles per hour when decedent passed him, together with his testimony as to the point he had reached when deceased, ahead of him, collided with defendant's automobile, and (2) the evidence as to the force of the collision and the mark laid down by the motorcycle tire. DeBolt's testimony was of very slight weight and was not even referred to in appellee's brief. The evidence as to the force of the collision was inconclusive. There was no evidence whatsoever that a motorcycle of the type and weight involved, if traveling within the legal speed limit, could have been brought to a halt within a distance of 117 feet, the distance from the beginning of the motorcycle's skid mark. Appellant's witness, Robert Sato, though cited by appellee, did not testify that the motorcycle could have been brought to a stop within this distance. He did testify that at 35 miles per hour the motorcycle would lay down a skid mark[1] of 100-115 feet on the rear wheel alone. It was controlled by both

---

[1] The term "skid mark" is that used by the witnesses. It does not signify any sideslip of the vehicle, as the record shows.

a foot brake and a hand brake. In making a sudden stop, the operator had to depend on the foot brake and could not apply the foot and hand brakes together. As Sato testified: "If the front wheel is not rolling, you cannot control the motorcycle."

Decedent's motorcycle was a light motorcycle weighing 350 lbs. and requiring a longer distance to stop than a heavier motorcycle according to the witness Sato, who explained that this was due to the fact that the wider tire of the heavier motorcycle would afford more traction. Sergeant Huch, speaking of a motorcycle twice as heavy, testified that in making a sudden stop both brakes should not be applied simultaneously as "The momentum of stopping the front and rear wheels would automatically jog your bike," "Almost like a jackknife, if both applied simultaneously." His testimony further showed that at 35 miles per hour even a heavy motorcycle could not be stopped within 100 feet.

A witness testified that deceased "did not drink, smoke, or even drink coffee." A laboratory test showed that deceased's blood contained .5 milligrams per cubic centimeter or .05 per cent, the lowest positive grade, but this was not shown to be significant. The doctor performing the autopsy testified that a trace of alcohol may be from natural causes and "If there results any normal trace of alcohol, we cannot tell whether the deceased had acquired that alcohol in the blood through drinking or other means."

In my view the case turned on the testimony of defendant. No other eye witness testified to the circumstances attending the actual collision. Defendant testified that he let five cars pass and when he made his left turn saw nothing else approaching. Did he correctly appraise the situation or should he have taken heed of the deceased approaching on his motorcycle? That was the issue for

the jury. The jury necessarily considered defendant's appearance on the stand, forming an opinion as to his prudence and judgment. But was that judgment affected at the time by the three cans of beer the defendant had just had? Defendant had had nothing to eat since noon.

What concerns me is the impression left with the jury that the use of intoxicants was sanctioned by the court. The material facts are the manner in which the drinks were ordered by the bailiff at the Halekulani Hotel and charged to the Territory, also the subsequent events at the dinner table at which jurors were permitted to order further drinks at their own expense.

The bailiff testified that he told the waitress he "had instructions from the Judge that these people may have one drink." According to the bailiff the judge did in fact instruct him that the jurors might have the usual cocktail if they were used to having one before dinner. While the bailiff further testified that his conversation with the waitress was outside the presence of the jurors, they could not have failed to receive the impression that drinking by a jury is officially sanctioned.

It generally is recognized that drinking of intoxicating liquor by a jury is not to be condoned. As stated by this court in the decision at 42 Haw. 630, 639: "We look with strong disapproval upon * * * consumption of liquor by the jurors during deliberation." The reason is that the consumption of intoxicating liquor does tend to affect the deliberate judgment of the jurors. Any indulgence by members of a jury, particularly when occurring during deliberation, is bound to cast suspicion on its verdict. However, in the present instance it is not so much the effect of the intoxicants themselves on the jury that concerns me as the improper influence on the jury of the official sanction given to their use of intoxicants at a time when they had retired to consider their verdict and

were about to resume deliberation. I am unable to perceive how they could fail to conclude that the drinking of intoxicants in moderation was to be viewed as a matter of little or no consequence. Had the court commented to that effect it of course would have been reversible error. *Cf., Territory* v. *Cutad,* 37 Haw. 182, 186. Here the only difference is that the comment was made outside the courtroom and conveyed to the jury through the bailiff's actions.

It is the general rule that if misconduct is such that prejudice might have resulted a presumption of prejudice arises. *Kaanaana* v. *Keahi,* 9 Haw. 318, 322; *Rigsby* v. *State,* 64 Tex. Crim. 504, 142 S.W. 901. The posture of the evidence in this case is such that this rule applies. The presumption of prejudice has not been rebutted and a new trial should have been ordered.