COMMONWEALTH *vs.* RALPH W. CHAPMAN.

Middlesex. November 5, 1962. — December 20, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Robbery. Evidence,* Admissions and confessions, Common criminal enterprise. *Practice, Criminal,* Exceptions: exception to charge.

Conviction of a defendant of armed robbery was warranted by evidence that late one night he entered his mother's house with two companions after a proposal had been made that she be robbed, that an altercation ensued between the defendant and his mother, that one of his companions displayed a revolver and said to her in the defendant's presence, "I can use it if I have to," and "started twirling it around," that the other companion pointed the gun at the mother and her younger son, that she was "pretty shaky . . . and . . . scared," that the defendant told his companions to take what they could find, that the mother's money, ring and watch were taken, and that after leaving the house the defendant got some of the money.   [252–254]

At the trial of an indictment, evidence warranted conclusions that a statement made and signed by the defendant before a police officer about six hours after commission of the crime and admitted in evidence was voluntary and that the defendant understood what he was saying even though he had consumed a considerable quantity of beer before making the statement; and characterization of the statement by the judge as a confession was not prejudicial to the defendant where the characterization was correct and, inasmuch as the statement was treated as a confession, the defendant was afforded a lengthy preliminary hearing on the question whether it was voluntary and the judge instructed the jury to disregard it if they found that it was not voluntary.   [254]

At the trial of an indictment charging robbery while armed with a dangerous weapon, there was no error in a portion of the charge stating that it was not necessary in order to find the defendant guilty "to find that the gun, the weapon, played any part — direct part in this operation."   [254–255]

At the trial of an indictment for armed robbery, there was no error in a portion of the charge stating that the twirling of a revolver and a statement to the victim by one participating in the affair with the defendant "And I know how to use this" would be force sufficient to justify the defendant's conviction.   [255]

On appeal following trial of an indictment under G. L. c. 278, §§ 33A–33G, an assignment of error based on an exception to a portion of the

charge taken generally without directing the attention of the trial judge
to substantial error therein had no standing.   [255–256]
At the trial of an indictment for an armed robbery allegedly participated
in by the defendant and two companions, there was no error in a por-
tion of the charge stating that the defendant could be found guilty if
the robbery took place as a reasonable and probable consequence of an
unlawful arrangement between the companions preceding the robbery,
although robbery was "not originally and initially planned."   [256]

INDICTMENT found and returned on December 5, 1961.

The case was tried in the Superior Court before *Val-
lely*, J.

*C. Thomas Zinni* (*Hrant H. Russian* with him) for the
defendant.

*Joseph D. Neylon*, Assistant District Attorney (*Ruth I.
Abrams*, Assistant District Attorney, with him), for the
Commonwealth.

SPALDING, J.   The defendant, who was tried to a jury
under an indictment charging armed robbery, was found
guilty.   The trial was conducted subject to G. L. c. 278,
§§ 33A–33G, and the case comes here by appeal.

1.   The seventh assignment of error, which will be dis-
cussed first, is based on the defendant's exception to the
denial of his motion for a directed verdict.

There was evidence of the following: On November 13,
1961, the defendant, aged seventeen, and his two com-
panions, Kehoe and Scurto, spent the evening playing cards
and drinking at the home of Kehoe's sister in Malden.
During the evening Scurto produced a revolver which he
showed to Chapman and Kehoe.   The defendant, who for
some time had not been living with his mother, stated that
he planned to go to New York and wished to go to his
mother's house to get his clothes.   Scurto agreed to drive
him there in his automobile.   At some time before they
went to Mrs. Chapman's house, Scurto said, "Let's go rob
Mrs. Chapman."   Shortly after midnight, the defendant,
Kehoe, and Scurto drove in the latter's car to the Chapman
home in Reading.   Scurto had in his pocket the revolver
which he had displayed earlier, and the defendant knew that
he was carrying it.   During the trip to the Chapman home,

the defendant said to his companions, "When we get there, take anything you want in the house." They arrived at the Chapman home around two o'clock in the morning. Finding the door locked, the defendant knocked on it and Mrs. Chapman opened the door. The defendant and his companions entered. The defendant told his mother that he had come to get his clothes; an altercation ensued, during which the defendant pounded on the door and "told his mother to shut up or he'd kill her." Mrs. Chapman "went into hysterics." Shortly after their arrival Mrs. Chapman noticed something protruding in Scurto's pocket and asked him if it was a gun. At first, Scurto denied that it was a gun but later admitted that he was carrying a gun and took it out of his pocket, saying in the defendant's presence, "Yes, this is a gun. I can use it if I have to." He then "started twirling it around." Subsequently, Scurto told Kehoe to "get them [Mrs. Chapman and her eleven year old son, David] into the other bedroom." Kehoe then came to the door of Mrs. Chapman's bedroom, pointed the gun at her and David, and ordered them into another bedroom. When Kehoe pointed the gun at Mrs. Chapman she was "pretty shaky . . . and . . . scared." The defendant told his companions to take what they could find. Upon being informed by his companions that they had found some money, the defendant told them to take it as "his mother had plenty of money in the bank." Scurto then took the money ($120) and also a ring and a watch, all of which was the property of Mrs. Chapman. The defendant and his companions then departed in Scurto's automobile. Scurto testified that after the money was stolen, "We all made a pact that we wouldn't say anything that would incriminate the other person . . . and that was agreed to." Of the $120 stolen from Mrs. Chapman, Scurto gave $10 each to Kehoe and the defendant, and kept the remainder.

We are of opinion that the defendant's motion for a directed verdict was rightly denied. The defendant admitted that he had participated in the events outlined above, but testified that he acquiesced in the conduct of Scurto and Kehoe for the sole purpose of getting them out of the house

without causing harm to his mother. The jury could have disbelieved this explanation. There was evidence which would amply warrant a finding that the defendant had committed every necessary element of the offence charged.

2. The exception on which the defendant's first assignment is grounded was to the admission of a statement made by him. The defendant was arrested in Stoneham an hour or two after the robbery. Around eight o'clock that morning he made a statement to a police officer who, after writing it down, submitted it to him and he signed it. At the trial, after a lengthy voir dire, the judge ruled that the statement was voluntary and admitted it in evidence. In accordance with the established rule in this Commonwealth, the jury were told that they were to pass on the confession and were to disregard it if they found it was not voluntary. See *Commonwealth* v. *Marshall,* 338 Mass. 460. There was ample evidence that the statement was voluntary.

While there was evidence that the defendant and his companions had consumed a considerable quantity of beer before and after they went to the Chapman home, it could have been found that the defendant was not so intoxicated as to be unable to understand what he was saying. See *Commonwealth* v. *Howe,* 9 Gray, 110. Indeed, Scurto, as did the police officers, testified that the defendant was sober.

The defendant contends that he was prejudiced because the judge referred to the statement several times as a confession. This contention is completely lacking in merit. At no time did the defendant object to this characterization. But at all events, we are of opinion that the characterization was correct. Moreover, by reason of the statement having been treated as a confession, the defendant was accorded greater safeguards with respect to its admissibility than he would have had in the case of an admission. See *Commonwealth* v. *Marshall,* 338 Mass. 460, 462. Compare *Commonwealth* v. *Haywood,* 247 Mass. 16, 17–18.

3. The defendant's second assignment of error relates to that portion of the charge wherein it was said, " [I]t isn't necessary in order to find the defendant guilty of this offense, to find that the gun, the weapon, played any part —

direct part in this operation.'' There was no error. In
*Commonwealth* v. *Nickologines,* 322 Mass. 274, 277, this
court said, ''The offence of robbery while armed is but an
aggravated form of common law robbery made punishable
in a certain manner by G. L. [Ter. Ed.] c. 265, § 17 . . . .
It is not necessary to show the use of a dangerous weapon
in proving the offence of robbery while armed. The gist of
the offence is being armed, not the use of the weapon.''

4. The third assignment of error challenges that part of
the charge in which the judge stated, in substance, that even
though the gun was not pointed at the victim, the twirling
of the weapon and a statement by one of the participants in
the robbery, ''And I know how to use this,'' would be indi-
rect or constructive force sufficient to justify a conviction
for robbery. Contrary to the contention of the defendant,
this statement was not attributed to the defendant. The
statement was made by Scurto and the jury must have so
understood. But the fact that Scurto made the statement
does not help the defendant. It is familiar law that where
there is proof, as here, that two or more persons are en-
gaged in a common criminal enterprise, the acts and decla-
rations of one, during the enterprise and in furtherance of
it, affect all. *Commonwealth* v. *Tivnon,* 8 Gray, 375, 381.
*Commonwealth* v. *Cline,* 213 Mass. 225, 226. *Common-
wealth* v. *Albert,* 222 Mass. 196. The judge explained this
principle fully and accurately to the jury.

5. The defendant in his fourth assignment of error com-
plains about the portion of the charge set forth in the mar-
gin.[1] It is settled that an assignment of error under G. L.

---

[1] ''Now, there is also some evidence that she was in fear of the defendant's
safety, and there is evidence, if believed, that would warrant you in finding
that the fear was directed by this defendant, in that he was telling his mother
that she was in danger from these two other people, and that he himself was in
danger from these other people. And if you find that she gave up possession
of this money in fear that he, apart from herself and her other child, was in
danger, that that was the fear that played on her mind, that if she gave it up
under those circumstances, and that this came about as a result of the defend-
ant's talk with her and his actions, and that actually he was working in concert
with the other two people at that time, then, of course, you'd be warranted in
finding that he applied the force that resulted in the removing of the property
from the possession of the victim. And if you find that the fear, violence, and
so forth, was directed against the victim indirectly by the claim that he would,
in turn, be harmed, then you'd be warranted in finding this defendant guilty
of robbery.''

c. 278, §§ 33A–33G, brings nothing to this court unless based on a valid exception. *Commonwealth* v. *Gray,* 314 Mass. 96, 102, and cases cited. The exception on which the fourth assignment of error is grounded was "[t]o so much of the charge as it pertains to the working in concert with the defendants and the direct part that the gun played in the entire episode." This exception falls far short of conveying to the judge the alleged infirmities which are now urged in support of the exception. Concerning exceptions of this sort, what was said in *Commonwealth* v. *Meserve,* 154 Mass. 64, at page 75, is pertinent. "It is incumbent on a defendant who takes his exceptions in this manner, without having made any specific requests for instructions, and without calling the attention of the court to the points relied on further than to allege a general exception to the specified portions of the charge, to make it plain that there has been some substantial error."

The defendant failed to direct the attention of the judge to a substantial error in the portion of the charge quoted above, and his criticisms of it in this court have not convinced us that there was any substantial error.

6. The judge, after summarizing the evidence relating to the robbery, charged, "If you find that that is the manner in which it happened, and that the robbery actually took place, although not originally and initially planned, that it took place as a reasonable and probable consequence of the first unlawful arrangement, if you find there was such an unlawful arrangement, then this defendant would be guilty of robbery as charged in this indictment." This instruction, which is the subject of the defendant's fifth assignment of error, was in accord with our decisions. There was no error. *Commonwealth* v. *Campbell,* 7 Allen, 541, 543–545. *Commonwealth* v. *Devereaux,* 256 Mass. 387, 395. *Commonwealth* v. *Devlin,* 335 Mass. 555, 567.

7. Finally, the defendant contends that he was prejudiced by the judge's charge with respect to the confession. Assignment of error 6. Some of the points urged in support of this exception have been dealt with in part 2 of this

opinion; the other points do not require discussion. From an examination of the entire charge and the judge's statement to the jury immediately preceding the voir dire, we are satisfied that the jury received adequate instructions on the subject of the confession and that there was no prejudicial error.

*Judgment affirmed.*