COMMONWEALTH *vs.* IRVING F. HINCKLEY.

Suffolk.    February 12, 1973. — March 23, 1973.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Practice, Criminal,* Exceptions: failure to save exception.    *Error,* Whether error shown.    *Homicide.*

At the trial of an indictment for manslaughter, where the judge excluded a statement of the defendant to the police when arrested at his apartment for lack of understanding of the *Miranda* warnings, and there was conflicting testimony as to whether the victim or a man accompanying him had been carrying a sword or a metal pipe, or both, at the time of the offence, a question by the prosecutor to the defendant whether he had told anybody about seeing the sword and pipe, to which the defendant objected and which the judge ruled should be "more specific," and the prosecutor's next question whether, after commission of the offence, the defendant ever told "anybody about a sword or this pipe," which was excluded on objection and the affirmative answer to which was struck, did not require a finding that the defendant was prejudiced by the inference that he failed to mention such weapons to the police when questioned at his apartment. [197-199]

At a criminal trial, after the defendant answered a series of questions by the prosecutor without objecting to any question individually, and the defendant's objection "to the entire line of questioning" was overruled, his exception brought nothing to this court. [198-200]

At the trial of an indictment for manslaughter, the defendant's detailed testimony concerning his stabbing of the victim warranted a finding that the killing was unintentional, and evidence that when the victim knocked on the door of the defendant's apartment the defendant opened the door and then shut it, procured a knife and reopened the door and thrust the knife out, hitting the victim in the chest, warranted a finding that the defendant had acted recklessly and in wanton disregard of the consequences and was guilty of involuntary manslaughter [200]; the judge's charge left no room for a misunderstanding as to the distinction between voluntary and involuntary manslaughter, or as to the exculpatory effect of the defendant's claim of self-defence [200-201].

INDICTMENT found and returned in the Superior Court on February 10, 1971.

The case was tried before *Linscott,* J.

*Klari Neuwelt* (*Robert Banks* with her) for the defendant.

*Daniel J. Murphy*, Assistant District Attorney, for the Commonwealth.

HALE, C.J.    The defendant was tried on an indictment charging manslaughter. The jury returned a verdict of guilty of "involuntary manslaughter." The case is before us on the defendant's appeal under G. L. c. 278, §§ 33A-33G. Error is alleged in permitting the assistant district attorney to pursue an improper line of questioning, in refusing to set aside the verdict, and in denying the defendant's motion for a new trial.

There was evidence from which the jury could have found the following facts. On the afternoon of December 25, 1970, between noon and 1:00 P.M., the defendant was in his apartment drinking beer with one Dorothy Thurston and a man called Russell. About two hours later, the defendant's wife and son arrived at the apartment. In the presence of the defendant, his wife, and his son, Dorothy Thurston made an accusation against the defendant. The defendant then began to beat her. She left the apartment. As she was

leaving the housing project in which the defendant lived, she met two men named Hayes and Lynch who were entering the same building. Both Hayes and Lynch were intoxicated. Following a conversation among the three of them, they went to the defendant's apartment where Lynch began knocking on the defendant's door while Hayes was at the window outside the apartment. The defendant opened the door and then shut it. After getting a knife from the kitchen, the defendant reopened the door and thrust the knife out, hitting Lynch in the chest. Lynch never entered the apartment. There was conflicting testimony as to whether Hayes or Lynch was carrying a certain sword or a metal pipe, or both, at this time. Following this incident, at about 4:00 P.M., a police officer was summoned. In the hallway, he found Lynch lying unconscious on his back with blood on his shirt. He also saw Hayes, holding a sword and a metal pipe, banging on the door to the defendant's apartment. Hayes was then taken into custody, and Lynch was taken to the hospital, where he died. The defendant and his family were not in the apartment at this time, having left earlier for dinner.

At about 7:00 P.M. the same day, the defendant and his family returned to the apartment. The defendant was then placed under arrest and the *Miranda* warnings were read to him. At the trial, a voir dire was held to determine the admissibility of the defendant's statements to the police made at the apartment following the arrest. Sergeant O'Laughlin testified that the defendant was drunk when questioned at his apartment but that he said he understood the *Miranda* warnings. He testified that the defendant told him he stabbed someone with a certain knife which the defendant pointed to in the kitchen. Later, after being taken to the police station, the defendant was again interrogated for a period of five minutes. On the defendant's oral motion, the judge ruled that the statements made by the defendant to the police at the apartment were to be excluded because the defendant did not have an opportunity to make an intelligent judgment on the *Miranda* warnings. The judge made no ruling suppressing the defendant's statement at the police station. No exception

was taken to this, nor was it brought to the judge's attention.

On direct and cross-examination, the defendant testified in detail concerning the incident in question and the subsequent dinner with his family. At the end of the cross-examination, the assistant district attorney asked the defendent, "Did you ever tell anybody on Christmas Day about seeing the sword and the pipe other than your wife?" Counsel for the defendant objected, and the judge ruled that the question should be "more specific." The assistant district attorney then asked, "After Lynch got stabbed on Christmas Day, did you ever tell anybody about a sword or this pipe?" Counsel for the defendant objected. The judge excluded the question. The defendant answered, "Yes," and the answer was stricken. The following then occurred:

THE ASSISTANT DISTRICT ATTORNEY: "You remember going down to the police station?"

THE WITNESS: "Yes."

THE ASSISTANT DISTRICT ATTORNEY: "You remember talking to the officers?"

THE WITNESS: "Yes."

THE ASSISTANT DISTRICT ATTORNEY: "Do you remember what you told the officers?"

THE JUDGE: "Yes or no?"

THE WITNESS: "No."

THE ASSISTANT DISTRICT ATTORNEY: "You can't remember that, right?"

THE WITNESS: "No."

THE ASSISTANT DISTRICT ATTORNEY: "But you can remember all the other details?"

THE WITNESS: "Yes."

COUNSEL FOR THE DEFENDANT: "Objection to the entire line of questioning, your Honor."

The objection was overruled, and the defendant took an exception.

The defendant now urges that this line of questioning pursued by the assistant district attorney was in violation of his right against self-incrimination. He argues that this line of questioning raised an inference in the minds of the

jurors that the defendant had failed to mention these weapons in his statement to the police in his apartment after the incident. Since the statement to the police was excluded on voir dire as not being the product of an intelligent understanding of the *Miranda* warnings, the defendant argues that the indirect reference to that statement in cross-examination was prejudicial.

We are not certain which questions the defendant referred to when he objected to the "entire line of questioning." The first two questions related to the defendant's argument were not allowed. On the first, the assistant district attorney was directed to be "more specific" and the second question was excluded and the answer was struck. The defendant argues, however, that notwithstanding the judge's exclusion, the mere asking of these questions, in the jury's presence, raises a prejudicial inference that the defendant failed to mention the weapons to the police. The defendant did not move for a mistrial. Moreover, we are not persuaded that such an inference was necessarily raised by these questions. The two questions literally sought to ascertain if the defendant had told anyone, other than his wife, about a certain sword and pipe. The alleged inference underlying these questions, even in light of the subsequent questions, is not so conspicuous as to require a finding of prejudice by this court. See *Commonwealth* v. *Marsh,* 354 Mass. 713, 719-720. Cf. *Fahy* v. *Connecticut,* 375 U. S. 85, 91; *Douglas* v. *Alabama,* 380 U. S. 415, 416-417.

The remaining questions were not objected to individually, but a general objection was entered to the entire line of questioning following these questions. The defendant's assignment of errors brings nothing to this court since it is not based on a valid exception. *Commonwealth* v. *Chapman,* 345 Mass. 251, 255-256. "The rule generally prevailing in this Commonwealth is that objections to matters of evidence must be seasonably made and exceptions taken when the evidence is offered . . . ." *Commonwealth* v. *Theberge,* 330 Mass. 520, 527. *Commonwealth* v. *Geagan,* 339 Mass. 487, 513. It is also significant that these remaining questions very clearly referred to the defendant's

statement at the police station which had not been suppressed by the judge following the voir dire.

The defendant argues that his motion for a new trial and to set aside the verdict should not have been denied because the verdict of "involuntary manslaughter" was inconsistent with the evidence and the charge. The statute under which the defendant was convicted only provides the punishment for manslaughter. G. L. c. 265, § 13. It is the common law, not the statute, which defines the crime of manslaughter and distinguishes between voluntary and involuntary manslaughter. Involuntary manslaughter may be characterized as "an unlawful homicide, unintentionally caused . . . by an act which constitutes such a disregard of probable harmful consequences to another as to constitute wanton or reckless conduct." *Commonwealth* v. *Campbell*, 352 Mass. 387, 397. *Commonwealth* v. *Welansky*, 316 Mass. 383, 396-401. It is to be distinguished from voluntary manslaughter, which is characterized by a real design and purpose to kill, but without malice. *Commonwealth* v. *Lussier*, 333 Mass. 83, 92. There was sufficient evidence to support a finding that the defendant was guilty of involuntary manslaughter. The jury could have concluded from the defendant's testimony that the killing was unintentional. It could have found that the defendant was brandishing a knife and that when he opened the apartment door he thrust the knife recklessly and in wanton disregard of the consequences to the victim.

The defendant argues that the judge's charge limited the jury's consideration to the theory of voluntary manslaughter and that a verdict of involuntary manslaughter indicates that the jury misunderstood the nature of their finding. In determining the propriety of the charge, the charge must be considered in its entirety. *Commonwealth* v. *Redmond*, 357 Mass. 333, 342. *Commonwealth* v. *Shea*, 323 Mass. 406, 416. So considered, we conclude that the judge's charge, to which no exception was taken, adequately defined and illustrated the elements of both voluntary and involuntary manslaughter and satisfactorily apprised

the jury of their collective responsibility on the exculpatory effect of the defendant's claim of self defence.

*Judgment affirmed.*