## FRANK LESLIE v. THE STATE.

### No. 1937. Decided May 31, 1900.

**1. Murder—Principal to—Intent—Charge of Court.**

On the trial of a defendant charged as a principal to a murder committed by another party, it is error for the charge of the court to interlock defendant's guilt with the intent of the actual slayer. Such defendant is to be tried and judged according to the intent with which he may have participated in the killing. To make such a defendant guilty he must have been present at the time and place and then and tnere of his express malice aforethought aided the slayer in committing the homicide. A charge of court is erroneous which simply instructs the jury that if the actual slayer killed deceased of his express malice aforethought, and defendant knew of his unlawful intent and was present and aided him, he would be guilty in the same degree as the slayer. Following Red v. Sta    ̄exas Criminal Reports, 414.

**2. Same—Presumption Against Defendant.**

For a judge to assume in his charge that a principal in the second degree is actuated by the same intent as a principal in the first degree, is to indulge a presumption against defendant and is erroneous.

**3. Same—Self-Defense—Charge.**

On a trial for murder a charge upon self-defense is not required where there is no evidence raising the issue of self-defense.

**4. Principal to Murder—What Constitutes.**

While mere presence at the time and place of the homicide will not constitute one a principal to a murder, nevertheless, when there is evidence of a previous conspiracy to kill and the defendant is present, the extent of his participation at the time is not material, and under certain circumstances his mere presence when the crime is committed may be a sufficient act of encouragement as to constitute him a principal.

**5. Murder—Defense of Another—Charge.**

On a trial for murder, where the evidence raises the issue of defense of another and calls for such a charge, it is error to refuse to charge the jury that defendant would be justified in procuring a weapon for such other party in order that the latter might protect himself against deceased who had threatened him. The defendant would be justified also in accompanying such other party in order to assist him in protecting himself against deceased. Brooks, Judge, dissenting.

APPEAL from the District Court of Erath. Tried below before Hon. J. S. STRAUGHAN.

Appeal from a conviction as a principal, to murder in the first degree; penalty, death.

The indictment charged appellant with the murder of John Adams, on the 18th day of December, 1897, by shooting him with a gun.

The first appeal in the matter of this killing was Ex parte Tom Wright et al., 39 Texas Criminal Reports, 193, and see the companion

case of Tom Wright v. State, 40 Texas Criminal Reports, 447. A reference to these reported cases in connection with the opinion in this appeal will show all the material facts attendant upon the homicide.

*Lindsey & Goodson, Tom McKean,* and *J. M. Hurt,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted as a principal to murder in the first degree, and his punishment assessed at death.

The theory of the State was that appellant was guilty of murder in the first degree, on the ground that the homicide was committed by Tom Wright of his express malice aforethought, and that appellant had agreed with Wright beforehand to kill deceased Adams, and was present, or that he knew the unlawful intent of Wright to kill Adams, and was present and aided and encouraged him in the act of killing. The testimony on the part of the State tended to show a state of ill feeling between Wright and Adams on account of the enforcement of local option in the precinct where the homicide occurred; that on an occasion shortly before the homicide an altercation occurred between Adams, who was constable of the precinct, and Wright, in which Adams abused Wright severely, and, among other things, told him he could not live in that town, and the next time he saw him he must be prepared,—that he was going to kill him. After this occurred, it appears, Wright, either through alarm or revenge, determined to kill Adams. The State's testimony tended to show that appellant, who was a friend of Wright, entered into the conspiracy with Wright to take the life of deceased, Adams; that he advised Wright to kill Adams; that he procured a gun and ammunition for that purpose; that he went with Wright from his residence, in the suburbs of Stephenville, to the business part of the town (Wright being armed with a shotgun procured by appellant, which he carried concealed under his coat), in order to find Adams; that together they lay in wait in a stairway near the postoffice until Adams appeared, and, while Adams had his back to them, Wright advanced upon him in a stealthy manner, being accompanied by appellant, who followed a few steps in his rear, and shot Adams when he was not aware of his presence; that appellant was present and encouraged Wright in said act of killing, and gave him aid and comfort immediately afterwards. Appellant's theory was that he did not agree and advise Wright to kill Adams before the homicide, and that he did not aid or encourage him in the commission of the same; that he was informed that Adams had threatened to kill Wright on sight, and that all he did was to procure a gun for Wright, in order that he might protect himself against Adams, and, though he was present at the time of the homicide, he was not there for the purpose of aiding and encouraging Wright to kill Adams, and did not do so, but suggested to Wright, immediately before the homicide,

not to kill Adams. And, to support this defense, appellant relied on his own testimony taken before the inquest, which was reproduced by the State, and upon the testimony of several other witnesses. The court instructed the jury on murder in the first and second degrees and manslaughter, and gave a charge on self-defense. The questions raised by appellant's assignments involve these instructions and the refusal of the court to give certain charges requested by appellant.

Appellant objected to the court's charge "because throughout it made the guilt of the defendant depend upon the guilt of Tom Wright and nowhere in the charge permitted the jury to pass upon the condition of the mind of defendant when he acted with Wright, if he did so, and nowhere permits the jury to pass upon the good faith, or want of it, in defendant, in acting with Wright, so far as Wright was prompted or may have acted in self-defense or in preparing for his own protection; and the jury were nowhere told what would be the law if they believed defendant acted with Wright, and further believed that defendant, in so acting, believed that Wright was acting in self-defense, or what would be the law if they believed that, at the time defendant acted with Wright, defendant was so excited from drink or other cause, as to render him incapable of cool reflection." We have examined the court's charge carefully, from murder to manslaughter, inclusive; and it does appear, as insisted by appellant, that the charge of the court throughout interlocks appellant's guilt with the intent with which Wright may have committed the homicide. As illustrative, the charge of murder in the first degree tells the jury that the person committing the homicide must do the act of his express malice aforethought, as before defined, and then tells the jury that all persons are principals who are guilty of acting together in the commission of the offense. "And where an offense is actually committed by one person, but another is present, and, knowing the unlawful intent, aids by acts, or encourages by words or gestures, the one actually engaged in the commission of the unlawful act, such person so aiding or encouraging is a principal offender. And any person who advises or agrees to the commission of an offense, and who is present when the same is committed, is a principal thereto, whether he aids in the illegal act or not." Then, in applying the law to the facts, the jury are instructed, substantially, that if Tom Wright of his express malice aforethought killed deceased, he would be guilty of murder in the first degree; and if defendant Leslie was present, and knowing of Wright's unlawful intent, aided him by acts, etc., to find him guilty of murder in the first degree; or if they believed defendant advised Wright, or agreed with him beforehand, to kill deceased, and was present at the time, although he did nothing, then he would be guilty of murder in the first degree. It will be observed that the jury are nowhere told that appellant must have been present at the time and place of his express malice aforethought, and then and there of his express malice aforethought aided Wright in the commission of the homicide. In this regard they are simply told that if Wright killed deceased of his

express malice aforethought, and appellant knew his unlawful intent, and was present and aided him, he would be guilty of homicide in the same degree as Wright. We discussed this matter very fully in Red v. State, 39 Texas Criminal Reports, 414, and we there held that every defendant on a trial for homicide is to be judged according to his own intent, and, where he is a principal in the second degree, if the facts call for it, he is not to be tried solely according to the intent of his principal in the first degree, but is to be tried according to the intent with which he may have participated; and we understand this to be supported by all the authorities. Guffee v. State, 8 Texas Crim. App., 187; 1 Whart. Crim. Law, secs. 214, 220, 477; 1 Russ. Crimes, p. 706; 1 Bish. Crim. Proc., sec. 5, and note; 1 Archb. Crim. Pr. and Pl., 8 ed., 785, 797; 1 Chit. Crim. Law, p. 258. An inspection of the forms of indictment where the party is charged as principal in the second degree will show that all the old forms require the indictment to allege that the principal in the first degree, of his malice aforethought, etc., committed the homicide, and then, following this, that it alleged that the principal in the second degree, of his malice aforethought, etc., was present, aiding, etc. See form in this respect, 1 Bish. Crim. Proc., sec. 5, which cites the form in note from 1 Archb. Crim. Pr. and Pl., 8 ed, 797, and 2 Chit. Crim. Law, pp. 4, 5. Now, what would be necessary to be alleged, it would be necessary to prove; and, it would seem, the allegations should be submitted in the same measure by the charge of the court. The charge in this particular instance not only fails to require the jury to believe the appellant participated in the homicide of his express malice aforethought, but does not even require him to participate in the homicide committed by Wright with any particular intent; merely requiring that he should have been present, knowing the intent of Wright, at the time Wright did the act of killing. The doctrine which everywhere pervades our criminal law, that a defendant is to be judged according to his own intent, should never be ignored, especially in a capital case; and for a judge to assume in a charge that a principal in the second degree is actuated by the same intent as a principal in the first degree is to indulge a presumption against a defendant. It may be true that appellant in this case engaged in the homicide with the same intent which actuated Wright, and the evidence on the part of the State tends strongly to indicate this; but the intent with which he participated was a question exclusively for the jury, and they should have been permitted to pass upon it under an appropriate charge by the court. The bare possibility that some other intent may have actuated appellant, or that his mind may not have been in the same condition as Wright's when he formed the intent to participate with him in the homicide, would forbid the court to assume against him that he was actuated with the same intent. There is some evidence in the record that appellant was laboring under excitement from liquor, or other cause not pertaining to Wright, suggesting that his mind may not have been in a calm and sedate frame at the time he entered into the

conspiracy with Wright; and he should have had the benefit of this condition of mind in the charge of the court. True, the learned judge gave an instruction on insanity produced by the recent use of intoxicating liquors, in favor of appellant, and he had the benefit of this. But this was not all that he was entitled to on this subject. The court should not have, throughout (as it did), assumed that his intent was the same as Wright's but should have left this matter with the jury.

Appellant urges some objection to the charge of the court on self-defense or the defense of another. It is sufficient answer to this to say that, as presented in this record, the court was not required to give a charge on self-defense; for the right of self-defense is certainly not to be found in the State's testimony, nor does it occur in the testimony of appellant himself, taken before the inquest, which was reproduced by the State.

Appellant further urges that the court should have given a charge explaining the difference between principals and accomplices. The complaint is that the record showed no acts or gestures of appellant at the time of the homicide in aid or encouragement of Wright; that all the acts of appellant were before that time, and were the acts of an accomplice. We can not agree to this contention. Appellant was present at the time of the killing, and, under the law, if he had previously agreed with Wright to kill deceased, Adams, and was present at the time of the killing, in pursuance of the conspiracy, he would be guilty, although he may have then done no act. But, more than this, an examination of the authorities will show that, while mere presence will not make one a principal, nevertheless, where there is evidence of conspiracy to kill beforehand, and the party is present, the extent of participation at the time is not material, and under certain circumstances mere presence at the place where the crime is committed may be a sufficient act of encouragement. 1 Whart. Crim. Law, sec. 211; 1 McClain Crim. Law, sec. 194. The record here affords a strong illustration of this. The State's testimony tended strongly to show a previous conspiracy between appellant and Wright to kill deceased; that appellant furnished the arms, and, being apprehensive that Wright did not have the nerve to kill Adams, accompanied him in order to encourage him to do the deed. In addition to this, if the State's evidence is to be believed, he was not only present, but he did acts of encouragement at the time.

Appellant requested the following special instruction, to wit: "If you believe from the evidence that prior to the killing of John Adams by Tom Wright, if he was killed by Wright, Adams had threatened to kill the said Wright, or to do him some serious bodily harm, and that said threats had been communicated to Wright prior to the killing, or if, from the acts, conduct, or declarations of Adams, it reasonably appeared to Wright, judging of the danger from his standpoint, that he was in danger from Adams of death or serious bodily harm, then Wright would have been justified in arming himself with a shotgun for the

purpose of defending himself, and would have had the right to go on the streets of Dublin, or anywhere his business, inclination, or pleasure suggested, so armed; and, in that event, defendant Leslie would have been justified in assisting the said Wright in procuring arms with which to defend himself, and could have gone with Wright to McCain & Daniel's office, and could have acted with Wright in all acts reasonably necessary, or that appeared reasonably necessary, to his, Wright's defense, and in so doing, the defendant would have been guilty of no offense; and this would be the case though you should believe that Wright had formed the intent to seek Adams and unlawfully kill him, unless you further believe beyond a reasonable doubt that such unlawful intent on the part of Wright was known to defendant at the time he assisted Wright, if he did assist him, in procuring arms, or in any other way acting with the said Wright." The court refused to give this, and defendant reserved an exception thereto. Appellant insists that this charge should have been given, because the court's charge did not embody this phase of the case, and that this defense is suggested by the evidence of appellant, which was reproduced by the State. An examination of the record shows that the strength of the State's case against Wright was mainly constituted by evidence of witnesses as to what occurred and what appellant did before the homicide in the way of advising Wright to kill Adams, and in preparing weapons for Wright with which to do the killing, and then going with him to the place of the homicide. Now, it will be seen from appellant's testimony that he denies that he advised Wright to kill Adams; and, while he admits that he procured the gun for Wright, he states that he did so for the purpose of enabling Wright to protect himself in case he was attacked by Adams; and the record shows that Adams had threatened to attack Wright whenever he met him. He further states that when they came down the stairway, out on the pavement, and saw Adams, he said to Wright: "Go on now, and don't have any trouble with him. Go on, and let him alone." If this testimony be true,—and that was a matter for the jury to determine,—appellant was entitled to have the court give the requested charge, because, if he believed Wright's life was in danger from an attack threatened to be made upon him by Adams, he had a right to procure a weapon for Wright, in order that he might protect himself against such attack, and he could go with him on the streets, and, in case his friend was attacked, he could act in his self-defense; and, if he did not participate with Wright in the attack on Adams, then he would not be guilty of any offense. And some such charge as that requested by appellant, it occurs to us, should have been given. In connection with this view of the case, the court should have given a charge on abondonment of the difficulty on the part of appellant. If appellant entered into a conspiracy with Wright to kill Adams, as suggested by the State's evidence, then his abandonment of the difficulty should have been of an unequivocal character. Harris v. State, 15

Texas Crim. App., 629; Phillips v. State, 26 Texas Crim. App., 228; State v. Allen, 47 Conn., 121. For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

.BROOKS, JUDGE.—I do not think there is either law or precedent for the reversal of this case. Hence I dissent.