# TERRITORY OF HAWAII *v.* FUROMORI, TOMINAGA, MURAKAMI, . TANAKA, FUROKAWA AND YASUOKA.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED DECEMBER 22, 1910.               DECIDED JANUARY 4, 1911.

PERRY AND DE BOLT, JJ., AND CIRCUIT JUDGE ROBINSON
IN PLACE OF HARTWELL, C.J.

CRIMINAL LAW—*evidence obtained illegally—constitutional rights.*

> The admissibility of evidence is not affected by the illegality of the means through which it has been obtained. The admission of such evidence, if obtained without order or sanction of the court, violates no constitutional rights.

STATUTES—*construction.*

> In the enactment of sections 3173-3178, R. L., and of Act 44, L. 1909, the legislature intended to include in each section all the elements essential to its individual completeness, and did not contemplate that on a charge for the violation of one section a conviction should be had solely upon evidence of the violation of another section.

NEW TRIAL—*lottery—che fa—proprietor of—player does not assist.*

> The defendants were convicted on a charge that they did "assist in maintaining and conducting a certain lottery, to wit, che fa," and the evidence tending to show that one of them was the proprietor and that two assisted, their conviction must be sustained, but as to the other three, the evidence tending to show that they only purchased tickets, were present and played, they did not come within the charge as assisting in the maintenance of the lottery and were wrongfully convicted. New trial granted as to them.

APPEAL AND ERROR—*instruction—ambiguous and misleading.*

> Even though an instruction is ambiguous and misleading, the mere saving of an exception to it without request for further instructions, presents no error on appeal.

## OPINION BY THE COURT BY DE BOLT, J.

The defendants having been tried, convicted and sentenced on a charge that they did "assist in maintaining and conducting a certain lottery, to-wit: che fa," bring the case here on exceptions.

Territory v. Furomori, 20 Haw. 344.

The record before us shows that at the time and place of the arrest of the defendants, the officers, without a search warrant, broke the door to the room in which the defendants were, entered, placed the defendants under arrest, seized and carried away a counting board, some che fa tickets, a tin box with a name in it and a book containing rules of the game of che fa, all of which, at the trial, were offered in evidence by the prosecution and admitted by the court over the objection of the defendants.

The defendants contend that this evidence was inadmissible because illegally obtained, and that its admission was erroneous. We held in *Territory* v. *Soga et al.,* ante, pp. 71, 82, that certain papers taken from the office of one of the defendants in that case without process of law and forcibly, were properly admitted in evidence, and we know of no reason why we should rule otherwise in this case.

It is the established rule that the admissibility of evidence is not affected by the illegality of the means through which it has been obtained. The admission of such evidence, if obtained without order or sanction of court, violates no constitutional rights. It is not in accord with the orderly administration of justice for a court, while engaged in the trial of a cause properly before it, to turn aside and determine another distinct matter, which it would be obliged to do on every occasion a question like this should arise, if the rule referred to is not to be observed. The evidence was properly admitted. See 3 Wigmore on Ev., §§2183, 2264; 1 Greenleaf on Ev., §254a; Gillett, Indirect and Collateral Ev., §87; *Adams* v. *New York,* 192 U. S. 585.

The prosecution having rested, the defendants, Tominaga, Tanaka, Yasuoka and Furomori moved the court that they be discharged on the ground that the evidence failed to show that they were guilty of the offense of maintaining or conducting, or of assisting in maintaining or conducting, a lottery as charged.

The question thus presented involves the construction of sections 3173-3178, R. L., and of Act 44, L. 1909. It will be observed that each of these sections, when read in connection with section 3179, R. L., which relates to the penalty, is a complete statute, separate and distinct from any other section. With this idea in mind, that the various sections are independent of each other, it may also be well to observe that each section, after enumerating certain prohibited acts, declares that every person who violates its provisions shall be "guilty of a misdemeanor."

Sections 3173-3179, R. L., read as follows:

"Sec. 3173. Maintaining or assisting, etc. Every person who contrives, prepares, sets up, draws, maintains or conducts, or assists in maintaining or conducting any lottery is guilty of a misdemeanor.

"Sec. 3174. Selling tickets, etc. Every person who sells or buys, gives or receives, has in possession or in any manner whatever deals with any ticket, chance, share or interest, or any paper, certificate or instrument purporting or understood to be or to represent any ticket, chance, share or interest in or depending upon the event of any lottery, is guilty of a misdemeanor.

"Sec. 3175. Playing prohibited games. Every person who deals, plays, or carries on, opens or causes to be opened, or who conducts either as owner or employee, whether for hire or not, any game of faro, monte, roulette, tan, fan tan, or any banking or percentage game played with cards, dice or any devices for money, checks, credit or any representative of value or of any other game in which money or anything of value is lost or won, and every person who plays or bets at or against any such prohibited game or games, and every person present where such game or games are being played or carried on, is guilty of a misdemeanor.

"Sec. 3176. Bunco games. Every person who by the game of 'three card monte,' 'shell game' or any other game, device, sleight of hand, pretention to fortune telling, trick or other means whatever by use of cards or other implements or instruments, or while betting on sides or hands of any such play or

game, fraudulently obtains from another person money or anything of value is guilty of a misdemeanor.

"Sec. 3177. Betting. Every person who bets or gambles upon any horse race, boat race, ball game, bicycle race or any athletic game, sport or contest, in any manner whatsoever, either by risking money or any other thing of value, is guilty of a misdemeanor.

"Sec. 3178. Using vessels, buildings, for gambling. Every person who lets or permits to be used any building or vessel or any portion thereof, knowing that it is to be used for setting up, managing or drawing any lottery, or for the purpose of selling or disposing of lottery tickets, chance, share or interest in or depending upon the event of any lottery or who knowingly permits any game or games prohibited by sections 3172-3182 to be played, conducted or dealt in any building or vessel owned or rented by such person in whole or in part, is guilty of a misdemeanor.

"Sec. 3179. Penalty. Every person guilty of a misdemeanor as provided in sections 3172-3182, shall be punishable by a fine of not more than one thousand dollars, or imprisonment at hard labor not exceeding one year."

Act 44, L. 1909, reads as follows:

"Section 3175A. Every person who shall exhibit or expose to view in any room, house or place barred or barricaded or otherwise built or protected in a manner to make it difficult of access or ingress to Police Officers, where three or more persons are present, any cards, dice, dominoes, or any gambling table layout, or any part of such layout, or any other gambling implements whatsoever used in any game of faro, monte, roulette, tan, fan tan, or any banking or percentage game played with cards, dice, dominoes, or any device for money, checks, credit or any representative of value, or any other game, in which money or anything of value is lost or won, is guilty of a misdemeanor.

"Section 3175B. Every person found present in any such room, house, or place barred or barricaded, or otherwise built or protected in a manner to make it difficult of access or ingress to Police Officers where are exhibited or exposed to view any cards, dice, dominoes, or any gambling layout, or any part of such layout or any other gambling implements whatsoever used

in any game of faro, monte, roulette, tan, fan tan, or any banking or percentage game played with cards, dice, dominoes, or any device for money, checks, credit or anything of value is lost or won, is guilty of a misdemeanor."

The legislature obviously intended in the enactment of these statutes to include in each section all the elements essential to its individual completeness, and that the violation of each was a misdemeanor, separate and distinct in every way from the violation of any other section. It is equally obvious that the legislature did not contemplate that on a charge for the violation of one section, a conviction should be had solely upon evidence of the violation of another section. It is fundamental that the accused shall be informed of the nature and cause of the accusation against him. This constitutional safeguard would become a mere mockery if a person charged with the commission of one offense could be convicted by showing a commission of another. And, in this connection, it may be well to observe that the defendants were placed upon trial on a charge that they did "assist in maintaining and conducting a certain lottery, to-wit, che fa," in violation of Sec. 3173.

As to the defendants Murakami and Furokawa there was evidence tending to show that the former conducted the lottery as proprietor, and that the latter assisted by selling tickets, receiving money therefor and turning it in to the proprietor. These two defendants come clearly within the charge and the conviction must be sustained. As to Tominaga, Yasuoka and Furomori the evidence fails to show that they committed any act in violation of Sec. 3173, the statute upon which the charge is based, unless, as the city and county attorney contends, the fact that they purchased che fa tickets, were present and participated in the game as mere players, must be held as constituting the offense of assisting in maintaining and conducting the lottery. Whether these acts on the part of the defendants were in violation of any other section or statute we need not say, but it is clear that such acts were not in violation of Sec.

Territory v. Furomori, 20 Haw. 344.

3173. The purchaser of a che fa ticket, by his presence and offer to buy, no doubt induces the proprietor of the lottery to make the sale; but he can not be said to "assist" him in it. Their respective motives and purposes are opposed to and in conflict, each with the other. They are antagonistic, and approach the game from opposite standpoints, each striving to win something of value from the other. *State* v. *Teahan*, 50 Conn. 92, 101; 1 Am. & Eng. Ency. Law, 390. The conviction as to these three defendants must be set aside.

Now as to the defendant Tanaka. So far as regards the purchase of tickets, being present and playing, his position is similar to that of the three last named defendants, but in addition to that, there is some evidence that he assisted in maintaining and conducting the lottery by selling, marking and delivering tickets to other players, collecting the money therefor and turning it over to the proprietor of the lottery. Hence, by reason of this dual position in which some of the evidence seems to have placed this defendant, we are presented with the question, saved by exception, as to the correctness of that portion of the court's charge given of its own motion to the jury, which reads: "I believe under the section (3173) that a player might be found guilty as a principal, provided you find that such player incited and encouraged the maintenance of the lottery itself."

We understand the argument urged against this instruction to be, that it is ambiguous and misleading, and that it is susceptible of and might have been construed by the jury as charging them, that, even though the player did not actually assist in the maintenance of the lottery, nevertheless, they were at liberty to convict him on the theory that merely as a player he assisted, within the meaning of the statute. To so construe the instruction it would be necessary to omit the proviso, which the court apparently intended as an essential part of the instruction. This, we are not at liberty to do. The jury was given to understand by this instruction that before they would be justified in convicting a player they must also find that he

had done some act in addition to 'merely playing, which might reasonably be expected, and so intended, to assist in the maintenance of the lottery.

However, even though the instruction is ambiguous, or misleading, and susceptible of the construction which counsel urge that the jury might have placed upon it, still, the mere saving of an exception to it without any request for further instructions, presents no error for us to consider. We must assume, nothing appearing to the contrary, that the jury correctly understood and construed the instruction. See 2 Thompson on Trials, §2431 and 11 Ency. Pl. & Pr. 224.

The conviction of Tanaka must therefore be sustained.

All of the defendants' requested instructions were refused, but they were given in the court's own language, and the only exception taken to those, we have just considered and disposed of.

Exceptions of the defendants Murakami, Furokawa and Tanaka are overruled; those of the defendants Tominaga, Yasuoka and Furomori are sustained for the reasons stated in this opinion, the verdict and judgment against them are set aside and vacated and a new trial granted as to them.

*J. W. Cathcart, City and County Attorney (F. W. Milverton, Deputy City and County Attorney,* with him on the brief), for the Territory.

*Lorrin Andrews* and *Eugene Murphy* for defendants.