## STATE OF HAWAII *v.* MILTON K. SHON.

### No. 4273.

OCTOBER 4, 1963.

TSUKIYAMA, C. J., CASSIDY, WIRTZ,
LEWIS AND MIZUHA, JJ.

159

OPINION OF THE COURT BY CASSIDY, J.

The appellant, Milton K. Shon, was convicted of robbery in the first degree under an indictment charging that in Honolulu on June 6, 1961, he, Ralph Antonio, Paul Yonashiro and William Texeira, Jr., while armed with a pistol, robbed Hing Bo Gum of approximately $300.00.[1] The four defendants were tried jointly before a jury. Texeira was acquitted. Yonashiro and Antonio were found guilty with Shon of first degree robbery. Shon alone has appealed. A fifth participant in the robbery, James Arlos, was not indicted. He was under 18 years

---

[1] While Antonio was the actual perpetrator of the robbery, all the defendants were charged as principals pursuant to the provisions of R.L.H. 1955, §§ 252-1 and 252-4. See *State* v. *Jones*, 45 Haw. 247, 266, 365 P.2d 460, 470.

of age and was handled as a juvenile delinquent. He testified for the prosecution.

No challenge has been made to the sufficiency of the evidence to sustain the conviction but we think a resume of the facts will facilitate consideration of the errors assigned, particularly appellant's fifth specification of error. Proof of the facts summarized hereunder is by evidence exclusive of the extrajudicial confessions and incriminating statements admitted against appellant's three co-defendants.

Appellant, Antonio, Yonashiro, Texeira and Arlos gathered on the evening of June 6, 1961, at their customary meeting place on Waterhouse Street in Kalihi, where there was a discussion on "pulling a job" of "holding up" or "sticking up" the Middle Street Market. Sometime around 9 o'clock they drove from Waterhouse Street in Yonashiro's automobile to and past the market on Middle Street. Because the service station next door to the market was still open they returned to Waterhouse Street. They waited there until about 10 o'clock and then drove back to and past the market again. The service station was closed so Yonashiro drove his car around the block to Kamehameha IV Road and parked it off the road just below Rose Street, the cross street near which the Middle Street Market is located. Antonio wrapped some bandages around his head and he and Arlos left. Yonashiro remained with the car. He testified, "I opened my hood and look around because we think cop come." Shon and Texeira walked down Rose Street to a bus stop about a hundred yards from Kamehameha IV Road, where they sat and waited on a bench until Antonio and Arlos returned.

Antonio had a 38-caliber revolver in his possession. Before the car was driven to the market on the first trip the pistol was loaded with bullets which Shon, accom-

panied by Antonio and Yonashiro, had bought the day before. Shon was selected to purchase the bullets because he was the only one of the three who was of age. After the purchase Shon, Antonio and Yonashiro went to Sand Island for target practice.

When Antonio and Arlos reached the market, which is on Middle Street a short distance from Rose Street, Antonio entered and after purchasing two bottles of soda water rejoined Arlos outside. Shortly thereafter the two entered the store and Antonio immediately accosted Hing Bo Gum with the pistol. Hing Bo Gum testified that Antonio pointed the weapon at him and said, "Don't move or else you are going to be dead." The witness also said that he could see the revolver was loaded and cocked. On demand of Antonio, he opened the cash register. Antonio and Arlos took about $330.00 in cash from the register and fled.

As Antonio and Arlos ran by the bus stop on Rose Street, Shon and Texeira joined them the rest of the way to the parked car. All five got into it and returned to Waterhouse Street where, according to appellant's testimony, they picked up his car and "dumped" Yonashiro's car at the latter's home. After transferring to appellant's car they drove to Arlos's home but his mother was up and about so they proceeded to appellant's home where they divided the stolen money, Shon getting $45.00 as his share.

Shon testified in his own behalf. He admitted purchasing the bullets at the direction of Antonio and Yonashiro and "chipping in" for the purchase. He admitted hearing the others "talking about how they were going to pull the plan" and seeing Antonio load the revolver at Waterhouse Street. He also admitted receiving a share of the stolen money. He admitted that he accompanied the group and that he physically acted in every respect as related in the above summary of facts, but he disclaimed

he had had any intention of joining the others in the robbery. He said he "went along just for the ride." It was his testimony at one point that after discussion in the group "as to how they were going to rob the store," someone said, "We go," and that he joined the others in getting into the car but that he told them "I don't want no part of the robbery," and that "I am going with you only for the ride." At another point he testified, "I heard someone say that they were going to pull the job," and when one of the others asked him "if you want to go up with us for the ride" he replied, "O. K. I will go along only for the ride now, not for nothing else. If you guys going to pull a job I don't want to be no party." He gave exculpatory explanations for other features of the evidence which tended to implicate him. He testified that he had not expected to receive any of the stolen money, that he thought the bullets were purchased for target shooting and that he and Texeira were not stationed at the bus stop by preplan or for any purpose connected with the robbery.

The other defendants also took the stand, first on *voir dire* examination on the voluntariness of the statements they gave the police and then to present their respective defenses to the charge. Antonio had rested without testifying in his defense proper but moved for and was granted leave to reopen his case. He took the stand and admitted the details of the robbery as related by Hing Bo Gum but said that he had had no intention of shooting or injuring the victim. Antonio testified that his intention in using the gun was, "Just to place the person in fear."

Appellant's first specification of error is that a written statement given by him to the police was exacted from him by coercion and was therefore improperly admitted in evidence.

There is considerable merit to the prosecution's claim that appellant has not complied with Rule 3(b)(4) of this court in specifying this contended error and that it should therefore be disregarded. However, it appears from the record that in the court below the appellant raised the question of the voluntariness of his written statement when it was offered and we think the specification, while inartfully drawn, does nevertheless sufficiently indicate the objection so made below and the desire of the appellant to present the issue on it to this court to warrant our considering the point.

Appellant was arrested on the evening of June 7 and was taken to Police Headquarters where he was first seen by Detective Huch at the receiving desk sometime between 10 and 11 o'clock. The officer said that when he talked to Shon there, and also a little later when he first questioned him in the quiz room Shon denied any knowledge whatsoever of the robbery. The detective said that he then confronted Shon with Arlos and that after Shon heard Arlos implicate him, Shon admitted being involved in the robbery and related in considerable detail what had happened in connection with the commission of it. In the forenoon of the next day Huch took a statement from appellant in question and answer form before a stenographer. The statement was transcribed and presented to the appellant on the morning of June 9. The officer said it was read and signed by appellant. This statement is the subject of appellant's Specification of Error No. 1.

*Voir dire* examinations on the voluntariness of confessions or statements obtained from each of the defendants were had out of the presence of the jury. In respect to his own statements appellant testified that at the outset of the interview Huch used abusive, threatening and vulgar language. He said that later Huch told him that if he would "speak up" he would help him out in court. Shon

said this was shortly after he was confronted by Arlos, and that it was by reason of this promise from the officer that he gave his oral statement on June 7. On cross-examination Huch specifically denied these accusations. On direct he had testified generally that no threats, inducements or promises were made to Shon.

Chief reliance is placed by appellant on testimony of Huch during cross-examination by Yonashiro's counsel. The detective was asked whether he didn't make a statement to Yonashiro that "The sooner the stories click the sooner they will go home," and his answer was that "They all wanted to get out on bail and I told them, 'As soon as possible, that the case is complete, they can go out on bail.' " When this statement was made, to whom it was made, and under what circumstances it was made, does not appear. On cross-examination by Texeira's counsel Huch was asked: "Did you tell Texeira before you started talking with him that if he didn't talk that you would keep him there?" He denied this. He then was asked, "Did you make any reference or did you make this statement: 'As soon as you make—As soon as you talk, then you can get out of here?' " His answer was: "I did not say anything like that, sir." He again was asked by Texeira's counsel: "Did you tell him this: 'As soon as we get this matter cleared up, then you may go home?' Did you ever make that statement to him before you talked to him?" This likewise was denied. In the light of this testimony and without any details as to the circumstances surrounding the statement about bail, the trial judge was not required to conclude, as now contended, that the "clear implication of the statement made by Officer Huch is that unless a confession was forthcoming, the case remains incomplete and the opportunity to get out on bail indefinitely denied." Shon's counsel asked Huch only one question bearing on this matter:

"Did you make a statement to him, 'If you don't talk, I am just going to keep you here?'" The answer was, "No, sir."

What is involved here is the written statement given on June 8, the day after the oral statement was made. Asked by his counsel what kind of answers he primarily gave in respect to the interrogation for the written statement, Shon testified: "I don't know. All I was giving was 'yes,' 'no.' I told him the story because he told me as soon as I am through, then I can go home." At a later point he was asked when he gave the statement and answered: "I don't remember. I was too excited because he said, 'As soon as he can wrap up this case, then he can go home, everybody can go home.'"

Aside from the compulsion of arrest which in itself does not render a confession inadmissible[2] what we have in this case is only a conflict in evidence on the issue of voluntariness and an argument as to the inference to be drawn from an isolated bit of testimony. There was substantial evidence presented by Huch's testimony which, if given credence, would fully warrant the conclusion that appellant's written statement, as well as his prior substantially similar oral statement, was voluntarily given. The admission of the written statement on the trial court's preliminary ruling on its voluntariness[3] is therefore unassailable. *State* v. *Ponteras,* 44 Haw. 71, 80-81, 351 P.2d 1097, 1102; *State* v. *Yoshida,* 44 Haw. 352, 364-365, 354 P.2d 986, 993; *State* v. *Foster,* 44 Haw. 403, 412-413, 354 P.2d 960, 966.

Mr. Justice Frankfurter's opinion in *Culombe* v.

---

[2] *Territory* v. *Young,* 37 Haw. 189, 197, *aff'd,* 9 Cir., 163 F.2d 490.

[3] R.L.H. 1955, § 222-26, provides: "No confession shall be received in evidence unless it is first made to appear to the judge before whom the case is being tried that such confession was in fact voluntarily made * * *."

*Connecticut,* 367 U.S. 568, is an enlightening exposition on the problems involved in police interrogation of suspects and the general considerations which govern judicial review of the admission in evidence of the results of such interrogation. At pp. 601-602 of the opinion it is stated:

"* * * No single litmus-paper test for constitutionally impermissible interrogation has been evolved: neither extensive cross-questioning—deprecated by the English judges; nor undue delay in arraignment—proscribed by *McNabb;* nor failure to caution a prisoner—enjoined by the Judges' Rules; nor refusal to permit communication with friends and legal counsel at stages in the proceeding when the prisoner is still only a suspect—prohibited by several state statutes. See *Lisenba* v. *California,* 314 U.S. 219; *Crooker* v. *California,* 357 U.S. 433; *Ashdown* v. *Utah,* 357 U.S. 426.

"Each of these factors, in company with all of the surrounding circumstances—the duration and conditions of detention (if the confessor has been detained), the manifest attitude of the police toward him, his physical and mental state, the diverse pressures which sap or sustain his powers of resistance and self-control —is relevant. The ultimate test remains that which has been the only clearly established test in Anglo-American courts for two hundred years: the test of voluntariness. Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process. *Rogers* v. *Richmond,* 365 U.S. 534. The line of distinction is that at which governing self-direction is lost

and compulsion, of whatever nature or however infused, propels or helps to propel the confession."

In *Haynes* v. *Washington,* 373 U.S. 503, 513, the court reaffirms the basic principle that "whether the confession was obtained by coercion or improper inducement can be determined only by an examination of all of the attendant circumstances."

In *State* v. *Evans,* 45 Haw. 622, 636, 372 P.2d 365, 374, it is stated: "The ultimate determination of the voluntary character of a confession is for the jury." In this case practically the same evidence on voluntariness as was given the court on the *voir dire* examination[4] was later repeated before the jury. Upon submission of the case the issue of whether Shon's statements were given voluntarily or not was squarely presented to the jury for its determination by fair and accurate instructions. The jury was definitely advised to disregard the statements if it determined they were not voluntary. Appellant's rights were fully protected. *Territory* v. *Alcosiba,* 36 Haw. 231, 235; *Territory* v. *Josiah,* 42 Haw. 367, 400; *State* v. *Foster, supra,* 44 Haw. 403, 419, 354 P.2d 960, 969.

By Specifications No. 2 and No. 3 appellant claims error in the refusal of the court to give his Requested Instructions Nos. 3 and 4. Requested Instruction No. 3 reads: "The absence of preconcert, or the absence of criminal intent to commit the crime of the principal actor does not make one who is merely present at the time and place of a crime to be an aider and abettor." Requested Instruction No. 4 reads: "To be guilty of the crime committed by a principal actor, one who is accused to the same extent must have the criminal intent to commit the

---

[4] However, Huch was not questioned on nor did he repeat before the jury his above-quoted testimony relative to the release of the defendants on bail given on *voir dire* while he was under cross-examination by Yonashiro's counsel.

robbery of the principal actor. The same criminal intent must exist in the minds of both."

The requested instructions, particularly No. 3, are not very clear, but it is obvious that the intended purpose of the two requested instructions was to inform the jury that an aider and abettor, charged as a principal as Shon was, could not be convicted of the crime committed by the principal actor unless he was *particeps criminis.*

The court instructed the jury, "In the crime of which the defendants are accused, there must exist a union or joint operation of act and intent." Also, "Merely assenting to or aiding or assisting in the commission of a crime without guilty knowledge or intent is not criminal, and a person so assenting to, or aiding, or assisting in, the commission of a crime without guilty knowledge or intent in respect thereto, is not an accomplice in the commission of such crime." Other portions of the charge are of similar import.

When the charge is considered as a whole, as it must be (*State* v. *Travis,* 45 Haw. 435, 437, 368 P.2d 883, 885; *Ginoza* v. *Takai Elec. Co.,* 40 Haw. 691, 711), the conclusion is inescapable that the jury could not have been other than fully advised of and firmly impressed with the proposition that before it could find the appellant guilty it must find that he knowingly, willfully and intentionally participated in the robbery expedition. The court's charge adequately apprised the jury that it could not find appellant guilty unless it was satisfied by the proof that he shared the criminal intent of Antonio and that there was a community of unlawful purpose between them at the time the robbery was committed. Refusal to give a requested instruction, even though the instruction is proper in itself, is not error if the subject of the instruction is adequately covered by other instructions. *Territory* v. *Schilling,* 17 Haw. 249, 267; *Territory* v. *Lee Chee,* 31

Haw. 587, 595-596; *Territory* v. *Martin,* 39 Haw. 100, 121; *State* v. *Ayala,* 46 Haw. 349, 351, 379 P.2d 590, 591. Appellant was not prejudiced by the failure of the court to give his Requested Instructions No. 3 and No. 4.

Appellant's fourth specification of error is that the trial judge erred in giving the following instruction:

> "And in this connection 'aid' means to support by furnishing strength or means in cooperation to effect a purpose, to help, to assist;
>
> " 'Incite' means to move to action, to stir up, to spur or urge on;
>
> " 'Countenance' means to encourage, favor, approve, aid or abet, to endorse tacitly or actively;
>
> " 'Encourage' means to give help or patronage to, to foster, to incite or urge."[5]

The specification fails to set forth the objection urged to the instruction at the trial, as required by Rule 3(b)(4) of this court. This in itself is sufficient grounds for refusing to consider the claimed error. *State* v. *Pokini,* 45 Haw. 295, 297, 367 P.2d 499, 501; *State* v. *Arena,* 46 Haw. 315, 335, 379 P.2d 594, 606; *Kealoha* v. *Tanaka,* 45 Haw. 457, 462-463, 370 P.2d 468, 472.

Reference to the transcript at the point indicated in the specification shows that the objection actually urged to the instruction was "on the grounds that the definition regarding 'countenance' is unconstitutional." The objection does not satisfy the requirements of Rule 30(e), H.R.Cr.P. It is obviously too general to save the ruling for review. See 23A, C.J.S., *Criminal Law,* § 1345, p. 936.

---

[5] The instruction was given after the court had given the jury the provisions of R.L.H. 1955, § 252-1, reading: "All who take part in the commission of any offense, or, being present, aid, incite, countenance or encourage others in the commission thereof, shall be deemed principals therein."

Appellant's Specification No. 4 well illustrates the purpose of requiring that specific objections be noted and distinctly stated when a party desires to oppose the granting of a requested instruction. In this court the appellant urges that the instruction is erroneous in that the lower court's amplification of the term "countenance" could have misled the jury into believing "that mere presence at the commission of the crime was enough in itself to convict the defendant-appellant as a principal in the commission of robbery in the first degree." We think what we have said in connection with Specifications No. 2 and No. 3 is one answer to the contention but even if there were any merit to appellant's argument and contention that the definition of "countenance" was misleading, it is obvious that had the trial court's attention been specifically directed to the objection now urged the instruction could easily have been modified to clarify any ambiguity in the respect claimed. Failure of the appellant to have made proper application in the trial court to clarify the definition precludes him from attacking the instruction in this court on the ground that it was misleading. *Territory* v. *Furomori,* 20 Haw. 344, 350; *Ginoza* v. *Takai Elec. Co., supra,* 40 Haw. 691, 711; *State* v. *Yoshida,* 45 Haw. 50, 64-65, 361 P.2d 1032, 1040; *State* v. *Arena, supra,* 46 Haw. 315, 335, 379 P.2d 594, 606.

Appellant's fifth and last specification of error presents the contention that the trial court erred in its response to a written question submitted by the jury during deliberation.

The question was put to the court as follows: "Some of the jurors are in doubt whether the 4 defendants have to have the same degree of guilt. Can one be 1st degree? Another be 2nd degree Inst: #49 2nd to the last line?" The court prepared and gave an instruction (numbered 50) reading as follows: "Ladies and gentlemen, in answer

to your question, 'Can one be first degree and another be second degree?' The reply is no."

The specification of error on the point avers: "Counsel for Defendant-Appellant objected to the instruction on the grounds that a failure to amplify the answer will cause the trial jury to raise the guilt of Defendant-Appellant from Second Degree Robbery to that of First Degree Robbery."

Appellant's stand on this specification rests in the main on the contention that, as a general proposition, one who aids and abets in the commission of a robbery does not necessarily and as a matter of law have to be convicted of the offense in the same degree as the principal. We find no necessity for approaching the issue abstractly as a general one. In this case the determination of the question of what degree of robbery the appellant was guilty of for participating in the commission of the offense charged was definitely conditioned and circumscribed by the evidence and the defense presented by his own testimony.

Appellant's testimony, in effect, was that while he knew the robbery was to be attempted and that in its commission the loaded gun would or might be used, he wanted no part in the commission of the offense and was merely accompanying the perpetrators for the ride. His defense was not that he was joining the expedition with reservations and on a limited basis, that is, that he would consent to be a party to the robbery if the pistol were not used, but rather it was that he was not participating at all and that his presence at the scene was merely as an innocent bystander who happened to be there only by reason of his desire to enjoy a ride with the others.

Stealing something from another by putting him in fear is robbery. R.L.H. 1955, § 306-1. Robbery by one armed with a dangerous weapon with intent to kill or

injure if resisted is robbery in the first degree and all other robbery is robbery in the second degree. *Id.,* § 306-8. One who commits robbery while armed with a dangerous weapon is presumed to have the necessary intent to make it first degree robbery. *Id.,* § 306-9. The presumption is equally applicable to one who being present aids and abets in the commission of a robbery. The aider and abettor is fully responsible for the acts of the actual perpetrator of the offense.

In *State* v. *Jones, supra,* 45 Haw. 247, 266, 365 P.2d 460, 470, a first degree robbery case in which only one of the participants was armed, it is stated:

"It is a well established rule, supported by express statutory provision in this jurisdiction, that any person who takes part in the commission of any offense, or being present, in any manner aids others in the commission of the offense, is deemed a principal therein and is subject to 'indictment, trial and punishment therefor, in the same manner and to the same effect as if he had been present at the commission thereof and actually taken part therein.' R.L.H. 1955, § 252-1 and § 252-4.

"The foregoing rule is dispositive of the issues raised under this assignment. Where two or more persons are present and participating in the commission of an offense, each is responsible for the acts and declarations of the others, done or made in furtherance of the perpetration and all legal presumptions pertaining to the offense are applicable to him."

In California any robbery committed while the perpetrator is armed with a deadly or dangerous weapon is first degree robbery. In this state, by § 306-9, such a robbery is presumed to be in the first degree. We think the principle enunciated in *People* v. *Silva,* 143 Cal. App. 2d 162, 300 P.2d 25, to the effect that in an armed robbery an aider

and abettor shares the guilt of the principal, is therefore applicable here. In that case it is stated, at p. 28:

"The appellant [Rueben Hernandez] contends that 'The verdict returned in this cause is contrary to the evidence', and further contends that the prosecution is bound by the extrajudicial statements of appellant which were introduced by the People, and further that the appellant never had any criminal intent at the time he stopped near the liquor store with Silva. He further sets forth that the intent to rob was in the mind of Silva and appellant was just a victim of circumstances.

"The complaining witness was held up and robbed of a sum of money and some liquor by a man identified as the defendant Silva who was armed with a gun. The money and property were obtained while the victim was in fear. [1] A gun having been in the hand of one of the participants, all concerned therein are guilty of robbery in the first degree."

See also *State* v. *Ornellas,* 46 Haw. 103, 109, 375 P.2d 1, 5; *People* v. *Powers,* 293 Ill. 600, 127 N.E. 681, 682; *Commonwealth* v. *Lowry,* 374 Pa. 594, 98 A.2d 733, 735-736; *Commonwealth* v. *Chapman,* ........ Mass. ........, 186 N.E.2d 818, 821.

In connection with the statutory provisions applicable to one who is present and aids and abets in the commission of an offense (§§ 252-1 and 252-4), appellant makes the point that the bus stop was a considerable distance from the scene of the robbery and that there could be no visible contact between a person at the bus stop and another person at the market, because of the city block intervening between the two places.

The bus stop was between two very important corners in the robbery, one being at the intersection of Rose Street and Kamehameha IV Road, below which the get-away car

was parked, and the other being at the intersection of Rose and Middle Streets, around which Antonio and Arlos could be expected to come in their flight from the scene of the robbery. The bus stop with its passenger bench obviously made an unsuspectable and strategically located lookout post. Under the circumstances the fact that there was no visible contact with the scene of the robbery from either the bus stop or the parked car is immaterial. A defendant need not be immediately present as an eye and ear witness of what goes on in order to be a principal under § 252-1. *State* v. *Yoshida, supra,* 45 Haw. 50, 66, 361 P.2d 1032, 1041. "It is not necessary, in order to make one 'present' within the meaning of this statute, that he be in immediate contact with the other actors." *Hill* v. *State,* 135 Tex. Crim. 567, 121 S.W.2d 996, 997. Nor is it necessary that the accomplice be physically present at the actual site of the robbery to come within the purview of § 252-1. If he is in the general vicinity or in a position to help in any manner in the perpetration of the robbery should the necessity arise he is deemed to be present and liable as a principal. As an illustration, it is stated in 1 Wharton, *Criminal Law and Procedure,* § 107, pp. 232-233, on authority of *State* v. *Hamilton,* 13 Nev. 386, that: "Presence is not to be determined by mere contiguity of space. A man who, on a mountain top at a distance of 30 miles, assists a highway robber by a signal, in making an attack, is a principal in the robbery."

In *White* v. *State,* 154 Tex. Crim. 489, 228 S.W.2d 165, the Texas court affirmed a first degree murder conviction for a killing by appellant's confederate incident to a robbery committed by him while appellant was waiting on the opposite side of the block. In denying a motion for rehearing the court stated, at pp. 169-170:

"The evidence is sufficient to justify the jury in finding the following:

"Appellant and Robert Bagwill made the journey in appellant's car from Mineral Wells to Stephenville on a joint venture their purpose being to acquire money by the unlawful means of robbery, burglary and theft.

"Having selected the filling station of deceased as a place to be robbed, appellant stopped on the opposite side of the block, and the companion Bagwill left appellant, armed with a deadly weapon, and went to the filling station. Appellant waited in his car for the return of Bagwill, as was their previously formed design, in order to carry Bagwill away after the offense and so secure the safety of his companion Bagwill.

\* \* \* \* \*

"Deceased was murdered by Bagwill during the existence of and in furtherance of the common design of appellant and Bagwill to rob the deceased. The killing was such as might have been, and should have been, contemplated as the result of their design to rob by the use of a loaded pistol.

"Appellant was present at the commission of the offense in the sense that 'present' is used in the statutes, Arts. 66 and 69, P.C., defining principals.

"It was not necessary that he be in immediate contact with Bagwill, or be so situated at the time as to make him an eye or ear witness. He was present in the sense of being immediately at hand, and in the performance of his part of the planned unlawful act, a reasonable consequence of which was the murder of the victim."

In *People* v. *Navarro*, 212 Cal. App. 2d 302, 27 Cal. Rptr. 716, it is stated and held at pp. 718, 719:

"\* \* \* Summarized, appellant contends in this statement that he was 80-95 feet away from the store throughout the robbery; that it was improper for the judge to instruct the jury that if guilty he would be

guilty of first degree armed robbery; * * *.

\* \* \* \* \*

"Section 31 of the Penal Code defines 'principals' as including those who aid and abet in the commission of a crime * * *.

"People serving as lookouts are aiders and abettors. (People v. Silva, 143 Cal.App.2d 162, 169, 300 P.2d 25.) Aiding and abetting makes a person guilty of first degree robbery even if he is not, himself, armed with a deadly weapon."

See *State* v. *Carvelo,* 45 Haw. 16, 21-22, 361 P.2d 45, 49; *Clark* v. *Commonwealth,* 269 Ky. 833, 108 S.W.2d 1036, 1039; *Vincent* v. *State,* 220 Md. 232, 151 A.2d 898, 902-903; *Gonzales* v. *State,* 171 Tex. Crim. 373, 350 S.W.2d 553, 554; *People* v. *Lewis,* 140 Cal. App. 475, 35 P.2d 561.

Also bearing out the proposition that the appellant's guilt in this case is measured by that of Antonio is the correlative general rule of law that a person who engages with others in the commission of an unlawful act is criminally responsible for everything done by his confederates which follows incidentally in the execution of the common design as one of its probable and natural consequences. 14 Am. Jur., *Criminal Law,* § 80, p. 823. See *State* v. *Yoshino,* 45 Haw. 640, 647, 372 P.2d 208, 211-212.

A jury's verdict must be responsive to the evidence. *Territory* v. *Thompson,* 26 Haw. 181, 185. The possible verdicts submitted to the jury are likewise determined by the evidence adduced. *Territory* v. *Buick,* 27 Haw. 28, 30-36; *State* v. *Travis, supra,* 45 Haw. 435, 439, 368 P.2d 883, 886; *People* v. *Frenchwood,* 27 Ill. 2d 412, 189 N.E.2d 328, 329; *People* v. *Day,* 71 Cal. App. 2d 1, 161 P.2d 803, 805; *People* v. *Wallace,* 36 Cal. App. 2d 1, 97 P.2d 256, 258.

It is our opinion that on the evidence in this case and under the law applicable the jury logically, and with adherence to the record, could have returned, as far as ap-

pellant is concerned, only a verdict finding him not guilty or a verdict of guilty of robbery in the degree corresponding to that which it returned for Antonio and that consequently the court's answer to the jury's inquiry was correct. There are also other independent reasons why Specification of Error No. 5 cannot be sustained.

The transcript pertaining to the settlement of the Court's Instruction No. 50 shows a colloquy between the court, the prosecutor, and counsel for the defendants without any specific objection being made by anyone to the instruction even though it is evident from what was said that counsel for all defendants except Antonio did not seem satisfied with or approve it as framed. The principal concern seemed to have been whether the court's reply to the jury's question, as proposed, should be amplified to include a direction that the jury might find any of the defendants not guilty. Upon reflection, after hearing the views of counsel, the court decided that its answer should be limited to the question posed by the jury. The court previously had instructed the jury: "Unless otherwise indicated, each instruction given is to be considered by you as referring separately and individually to each defendant." Also: "It is your duty to give separate, personal consideration to the case of each individual defendant. When you do so, you should analyze what the evidence shows with respect to that individual, leaving out of consideration entirely any evidence admitted solely against some other defendant. Each defendant is entitled to have his case determined solely from his own acts and statements and the other evidence in the case which may be applicable to him." Further, the court in instructing the jury as to the possible verdicts it might return had set them out as to each of the defendants separately, with the proviso hereinafter noted. Under the circumstances we see no error in the court's failure to remind the jury

that the not guilty verdict was still available as to each of the defendants prosecuted as an aider and abettor. That the jury could not have been misled in that respect is evidenced by its acquittal of Texeira.

There is a further reason why appellant is barred from contending that the jury was improperly precluded from considering in his case a verdict in a lesser degree than that for Antonio. The record shows that appellant had previously agreed to the submission of the case to the jury on the basis that all defendants who were found to have participated in the robbery by aiding and abetting in its commission were guilty in the same degree as the jury would fix for the principal actor. The State had submitted an instruction requiring the jury to find as to each defendant that he was either "Not Guilty" or, "Guilty as Charged." Appellant countered with an instruction submitting the additional possible verdict of "Second Degree Robbery." The court prepared Instruction No. 49, which informed the jury that they might find as to each of the defendants any of the three verdicts, that is, Guilty as Charged, Guilty of Second Degree Robbery, or Not Guilty but with the proviso "that any verdicts of guilty must be in the same degree." This instruction was given over the objection of the prosecution and without objection on the part of appellant or any other defendant. Under the circumstances, appellant is precluded from now claiming that error was committed because the jury was not given the option in the event it found Antonio guilty of first degree robbery to return a verdict against him, appellant, for second degree robbery. A party may not complain on appeal of error in instructions to the jury which he has invited or agreed to. *Kealoha* v. *Tanaka, supra,* 45 Haw. 457, 461-462, 370 P.2d 468, 471; *Glover* v. *Fong,* 42 Haw. 560, 567-568; *State* v. *Gager,* 45 Haw. 478, 483-484, 370 P.2d 739, 743; *In re Ching's Estate,* 46 Haw. 127, 129-130,

376 P.2d 125, 127. Specification No. 5 is overruled.
Judgment affirmed.

*Shuichi Miyasaki* for defendant-appellant.

*John H. Peters,* Prosecuting Attorney, City and County of Honolulu, and *George I. Hieda,* Deputy Prosecuting Attorney, for the State, plaintiff-appellee.

CONCURRING OPINION OF LEWIS, J.

In concurring in the affirmance of the judgment, I do so as to Specification No. 5 on the ground that defendant did not object to the proviso of Instruction No. 49 which informed the jury "that any verdicts of guilty must be in the same degree," nor did defendant seek in Instruction No. 50 any direction that the jury might return verdicts of guilty in different degrees.

The colloquy in connection with Instruction No. 50, set out in pertinent part in the footnote,[1] plainly shows that defendant's whole request to the court was for amplification of the instruction with regard to acquittal. On that

___

[1] "THE COURT: The record will note that we are assembled in chambers. The defendants and their counsel are present. The jury has filed a question with the court as of 10:55 p.m. reading, 'Some of the jurors are in doubt whether the 4 defendants have to have the same degree of guilt. Can one be 1st degree? Another be 2nd degree Inst: #49 2nd to last line?' File this with the record.

"The Court intends to give them Instruction 50, reading, 'In answer to your question "Can one be 1st degree, another be 2nd degree", the reply is "no" '.

"Any objection?

"MR. GEORGE ST. SURE: I think there should be some amplification.

"MR. MIYASAKI [attorney for defendant-appellant]: But this does not preclude the finding of not guilty.

"THE COURT: My reaction was to include that. 'By giving this instruction I do not mean to indicate'—

"MR. DE MELLO: But, your Honor, then we are going beyond the scope of the question.

"THE COURT: Yes, that is the trouble; it is going beyond the question. Do you object, Mr. Miyasaki?

"MR. MIYASAKI: Let me give you my mental processes why I am saying what I am, because to me it seems as though when they ask the

point there was no error for the reasons set out in the court's opinion. Defendant did not seek to make it possible for the jury to bring in a verdict of second degree in his case irrespective of other verdicts, but on the contrary affirmed that if the jury "want to put it second * * * it is an acquittal." There is no question before this court as to whether the jury should have been allowed leeway to bring in verdicts of guilty in different degrees.

DISSENTING OPINION OF MIZUHA, J.

I agree with the majority that "the determination of the question of what degree of robbery the appellant was guilty of for participating in the commission of the offense charged was definitely conditioned and circumscribed by the evidence and the defense presented by his own testimony." However, the degree of the offense was a matter for the jury to determine.

Our statute provides that "Robbery by one armed with a dangerous weapon *with intent,* if resisted, to kill, maim, wound or inflict other severe corporal injury upon the person robbed * * * is robbery in the first degree, and all other robbery is robbery in the second degree." R.L.H. 1955, § 306-8. (Emphasis added.)

---

question that they have, somebody, they feel, is guilty of a first degree and there is doubt that others are guilty of second and obviously they must be not guilty then, didn't quite meet the requirements of first degree robbery.

"THE COURT: Any other objection?

"MR. MIYASAKI: And to merely say 'no' and to force that second degree to first by a misinterpretation here, it would be highly prejudicial, because this question, to answer 'no' will tend to make them do that. Let's say you have somebody that would be beyond a reasonable doubt, let's say, first degree, and those that they are thinking of a second degree must be acquitted in this case, because in their minds it hasn't met the first degree test. That is the reason why they want to put it second. If so, it is an acquittal, and to say 'no' to that question would seem you were saying, because you say 'no' it should be forced to be put first degree. It should be forced to be an acquittal would be the fair thing to say."

Unlike statutes in other jurisdictions, where robbery committed by a person armed with a dangerous or deadly weapon is robbery in the first degree, our statute specifically provides that the person must have the *intent*, if resisted, to kill, maim, wound or inflict other severe corporal injury upon the person robbed before it is robbery in the first degree.

"* * * Generally speaking, to find one guilty as a principal, on the ground that he was an aider and abetter, it must be proven that he shared in the criminal intent of the principal and there must be a community of unlawful purpose at the time the act is committed. As the term 'aiding and abetting' implies, it assumes some participation in the criminal act in furtherance of the common design, either before or at the time the criminal act is committed. It implies some conduct of an affirmative nature and mere negative acquiescence is not sufficient. * * *" *Johnson* v. *United States,* 195 F.2d 673, 675 (8th Cir. 1952). See also *State* v. *Ham,* 238 N.C. 94, 76 S.E.2d 346; *Gibbs* v. *State,* 223 Miss. 1, 77 So. 2d 705; *State* v. *Johnson,* 57 N.M. 716, 263 P.2d 282.

An aider and abettor may have a different criminal intent from the principal actor and may be found guilty in accordance with his own intent in participating in the criminal act. *State* v. *Absence,* 4 Port. 397 (Ala.); *Red* v. *The State,* 39 Tex. Crim. 667, 47 S.W. 1003. An aider and abettor may be found guilty of a higher or lower degree of crime than that of which the principal is convicted. *State* v. *Martino,* 27 N.M. 1, 192 Pac. 507; *Red* v. *The State, supra; State* v. *Absence, supra; Speer* v. *The State,* 52 Ga. App. 209, 182 S.E. 824. The degree of guilt of an aider and abettor depends entirely upon his own actions, intent, and state of mind rather than on that of the principal actor. *State* v. *Lord,* 42 N.M. 638, 84 P.2d 80.

In *Leslie* v. *State,* 42 Tex. Crim. 65, 57 S.W. 659, the

defendant was convicted as a principal of murder in the first degree on the theory that he knew of the unlawful intent of the principal actor, and was present at the actual scene of the crime and aided and urged him in the killing. The court in reversing said:

"* * * It may be true that appellant in this case engaged in the homicide with the same intent which actuated [the principal actor] * * *; *but the intent with which he participated was a question exclusively for the jury, and they should have been permitted to pass upon it under an appropriate charge by the court.* * * *" (Emphasis added.)

See also *Faulkner v. The State,* 43 Tex. Crim. 311, 65 S.W. 1093; *Oates v. The State,* 51 Tex. Crim. 449, 103 S.W. 859.

*White v. State,* 154 Tex. Crim. 489, 228 S.W.2d 165 and *State v. Jones,* 45 Haw. 247, 365 P.2d 460, cited in the court's opinion, can be distinguished, inasmuch as in each case, the defendant who was an aider and abettor, was tried separately and not in a joint trial with the principal actor or actors.

*People v. Silva,* 143 Cal. App. 2d 162, 300 P.2d 25, is also inapplicable because in California, robbery perpetrated by torture or by a person being armed, with a dangerous or deadly weapon, is robbery in the first degree. Cal. Penal Code § 211(a). Under our statute, robbery by one armed with a dangerous weapon, can be held to be first degree robbery, only when there is the *intent,* if resisted, to kill, maim, wound or inflict other severe corporal injury upon the person robbed. R.L.H. 1955, § 306-8.

In spite of the specific proviso in instruction 49 which said in part: "* * * Provided that any verdicts of guilty must be in the same degree," the jury after deliberating approximately three hours, returned with the question: " 'Some of the jurors are in doubt whether the 4 defendants have to have the same degree of guilt. Can one be

1st degree? Another be 2nd degree * * *.' " The reply was " 'No' " in instruction 50.

On the basis of the testimony of the defendant and the confusion among the jurors with regard to instruction 49, I cannot agree with the majority that "the jury logically, and with adherence to the record, could have returned, as far as the appellant is concerned, only a verdict finding him not guilty or a verdict of guilty of robbery in the degree corresponding to that which it returned for Antonio [the principal actor] * * *." In this same trial, the jury acquitted defendant Texeira who sat on a bench with appellant at the bus stop. Without the mandatory instruction as to the degree of guilt of all defendants, the jury might have found appellant guilty of second degree robbery.

Defendant is not precluded from claiming that it was error for the trial court to give instruction 50. Instruction 49 was a court instruction, and it contained the provision "* * * that any verdicts of guilty must be in the same degree." Defendant did not object to this instruction. However, when the jury returned with the question as to the guilt of defendants, " 'Can one be guilty of first degree, another second degree,' " defendant objected to the court's reply " 'No' " in instruction 50 on two grounds as follows:

"THE COURT: * * * Do you object, Mr. Miyasaki?

"MR. MIYASAKI: Let me give you my mental processes why I am saying what I am, because to me it seems as though when they ask the question that they have, somebody, they feel, is guilty of a first degree and there is doubt that others are guilty of second and obviously they must be not guilty then, didn't quite meet the requirements of first degree robbery.

"THE COURT: Any other objection?

"MR. MIYASAKI: And to merely say 'no' and to

force that second degree to first by a misinterpretation here, it would be highly prejudicial, because this question, to answer 'no' will tend to make them do that. * * *"

I cannot agree with the concurring opinion that "defendant did not seek to make it possible for the jury to bring in a verdict of second degree in his case * * *." Counsel's second objection quoted above clearly indicated to the court that a simple "No" answer to the question would prevent the jury from returning separate guilty verdicts as to the degree of robbery, for each of the defendants, which would be prejudicial to his client who, although an aider and abettor, was being tried as a principal with the principal actor.

The trial court's understanding of the grounds of defendant's objection is evident from the statement made to counsel for the principal actor after the same objection was made by counsel for the two other defendants, who were aiders and abettors.

"THE COURT: Robert St. Sure, you have no objection? *Your client is in a different situation.*

"MR. ROBERT ST. SURE: I have no objection, your Honor." (Emphasis added.)

Naturally, counsel for the principal actor had no objection to instruction 50, since this direction by the court to the jury trebled his client's chances for a second degree robbery conviction, for there were three other defendants, who were aiders and abettors, in this joint trial. The trial court then stated: "* * * The record will note that this instruction is given over objection * * *."

"The court has the power, and it is its right and duty, either with or without request, and at any time during the trial, to withdraw or to correct its instructions to the jury, if, on reflection, it is considered that they have been erroneously or unnecessarily given; and even though

the jury have retired they may be recalled for such purpose * * *." 23A C.J.S., *Criminal Law*, § 1322. See *State* v. *O'Keefe*, 45 Haw. 368, 367 P.2d 91; *State* v. *Benton*, 38 Del. 1, 187 Atl. 609.

Appellant's testimony with reference to the robbery was sufficient to raise a doubt in the minds of the jury as to his criminal intent. The court, on the basis of evidence adduced at the trial, should have correctly instructed the jury in instruction 50, that any of the three verdicts of guilty of robbery in the first degree, guilty of robbery in the second degree, or not guilty, could be returned as to each defendant. The trial court erred in giving instruction 50, for it took away from the jury, the determination of whether the defendant Shon, an aider and abettor, had the same criminal intent as the principal actor, Antonio.